# WARNER v. TEXAS AND PACIFIC RAILWAY COMPANY.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH. CIRCUIT.

No. 47.- Argued May 5, 1896. — Decided November 30, 1896.

The clause of the statute of frauds, which requires a memorandum in writing of "any agreement which is not to be performed within the space of one year from the making thereof," applies only to agreements which, according to the intention of the parties, as shown by the terms of their contract, cannot be fully performed within a year; and not to an agreement which may be fully performed within the year, although the time of performance is uncertain, and may probably extend, and may have been expected by the parties to extend, and does in fact extend, beyond the year.

An oral agreement between a railroad company and the owner of a mill, by which it is agreed that, if he will furnish the ties and grade the ground for a switch opposite his mill, the company will put down the iron rails and maintain the switch for his benefit for shipping purposes as long as he needs it, is not within the statute of frauds, as an agreement not to be performed within a year.

*Packet Co.* v. *Sickles,* 5 Wall. 580, doubted.

The provisions of the statute of frauds of the State of Texas concerning sales or leases of real estate do not include grants of easements.

THIS was an action brought May 9, 1892, by Warner against the Texas and Pacific Railway Company, a corporation created ·by the laws of the United States, upon a contract made in 1874, by which it was agreed between the parties that if the plaintiff would grade the ground for a switch, and put on the ties, at a certain point on the defendant's railroad, the defendant would put down the rails and maintain the switch for the plaintiff's benefit for shipping purposes as long as he needed it. The defendant pleaded that the contract was oral, and within the statute of frauds, because it was "not to be performed within one year from the making thereof," and because it was "a grant or conveyance by this defendant of an estate of inheritance, and for a term of more than one year, in lands."

At the trial, the plaintiff, being called as witness in his own behalf, testified that prior to the year 1874 he had been engaged in the lumbering and milling business in Iowa and in Arkansas, and, in contemplation of breaking up and consolidating his business, came to Texas, and selected a point, afterwards known as Warner's Switch, as a suitable location, providing he could obtain transportation facilities; that he found at that point an abundance of fine pine timber, and, three miles back from the railroad, a stream, known as Big Sandy Creek, peculiarly adapted to floating logs, and lined for many miles above with pine timber; that in 1874 the defendant's agent, after conversing with him about his experience in the lumber business, the capacity of his mill, and the amount of lumber accessible from the proposed location, made an oral contract with him, by which it was agreed that if he would furnish the ties and grade the ground for the switch, the defendant would put down the iron rails and maintain the switch for the plaintiff's benefit for shipping purposes as long as he needed it; that the plaintiff immediately graded the ground for the switch, and got out and put down the ties, and the defendant put down the iron rails and established the switch; and that the plaintiff, on the faith of the continuance of transportation facilities at the switch, put up a large saw-mill, bought many thousand acres of land and timber rights and the water privileges of Big Sandy Creek, made a tram road three miles long from the switch to the creek, and otherwise expended large sums of money, and sawed and shipped large quantities of lumber, until the defendant, on May 19, 1887, while its road was operated by receivers, tore up the switch and ties, and destroyed his transportation facilities, leaving his lands and other property without any connection with the railroad. His testimony also tended to prove that he had thereby been injured to the amount of more than $50,000, for which the defendant was liable, if the contract sued on was not within the statute of frauds.

On cross-examination, the plaintiff testified that, when he made the contract, he expected to engage in the manufacture of lumber at this place for more than one year, and to stay

there, and to have a site for lumber there, as long as he lived; and that he told the defendant's agent, in the conversation between them at the time of making the contract, that there was lumber enough in sight on the railroad to run a mill for ten years, and by moving back to the creek there would be enough to run a mill for twenty years longer.

No other testimony being offered by either party, bearing upon the question whether the contract sued on was within the statute of frauds, the Circuit Court, against the plaintiff's objection and exception, ruled that the contract was within the statute, instructed the jury to find a verdict for the defendant, and rendered judgment thereon, which was affirmed by the Circuit Court of Appeals, upon the ground that the contract was within the statute of frauds, as one not to be performed within a year. 13 U. S. App. 236. The plaintiff sued out this writ of error.

*Mr. Horace Chilton* for plaintiff in error.

*Mr. John F. Dillon* for defendant in error. *Mr. Winslow S. Pierce* and *Mr. David D. Duncan* were on his brief.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

The statute of frauds of the State of Texas, reënacting, in this particular, the English statute of 29 Car. II, c. 3, § 4, (1677) provides that no action shall be brought "upon any agreement which is not to be performed within the space of one year from the making thereof," unless the "agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized." Texas Stat. January 18, 1840; 1 Paschal's Digest, (4th ed.) art. 3875; Rev. Stat. of 1879, art. 2464; *Bason v. Hughart,* 2 Texas, 476, 480.

This case has been so fully and ably argued, and the construction of this clause of the statute of frauds has so seldom

come before this court, that it will be useful, before considering the particular contract now in question, to refer to some of the principal decisions upon the subject in the courts of England, and of the several States.

In the earliest reported case in England upon this clause of the statute, regard seems to have been had to the time of actual performance, in deciding that an oral agreement that if the plaintiff would procure a marriage between the defendant and a certain lady, the defendant would pay him fifty. guineas, was not within the statute; Lord Holt saying: " Though the promise depends upon a contingent, the which may not happen in a long time, yet if the contingent happen within a year, the action shall be maintainable, and is not within the statute." *Francam* v. *Foster*, (1692) Skinner, 326; *S. C.* Holt, 25.

A year later, another case before Lord Holt presented the question whether the words "agreement not to be performed within one year" should be construed as meaning every agreement which *need* not be performed within the year, or as meaning only an agreement which *could* not be performed within the year, and thus, according as the one or the other construction should be adopted, including or excluding an agreement which might or might not be performed within the year, without regard to the time of actual performance. The latter was decided to be the true construction.

That was an action upon an oral agreement, by which the defendant promised, for one guinea paid, to pay the plaintiff so many at the day of his marriage; and the marriage did not happen within the year. The case was considered by all the judges. Lord Holt " was of opinion that it ought to have been in writing, because the design of the statute was, not to trust to the memory of witnesses for a longer time than one year." But the great majority of the judges were of opinion that the statute included those agreements only that were impossible to be performed within the year, and that the case was not within the statute, because the marriage might have happened within a year after the agreement; and laid down this rule: " Where the agreement is to be performed upon a

contingent, and it does not appear within the agreement, that it is to be performed after the year, then a note in writing is not necessary, for the contingent might happen within the year; but where it appears by the whole tenor of the agreement, that it is to be performed after the year, there a note is necessary." *Peter* v. *Compton*, (1693) Skinner, 353; *S. C.* Holt, 326; *S. C.* cited by Lord Holt in *Smith* v. *Westall*, 1 Ld. Raym. 316, 317; *Anon.*, Comyns, 49, 50; Comberbach, 463.

Accordingly, about the same time, all the judges held that a promise to pay so much money upon the return of a certain ship, which ship happened not to return within two years after the promise made, was not within the statute, "for that by possibility the ship might have returned within a year; and although by accident it happened not to return so soon, yet, they said, that clause of the statute extends only to such promises where, by the express appointment of the party, the thing is not to be performed within a year." *Anon.*, 1 Salk. 280.

Again, in a case in the King's Bench in 1762, an agreement to leave money by will was held not to be within the statute, although uncertain as to the time of performance. Lord Mansfield said that the law was settled by the earlier cases. Mr. Justice Denison said: "The statute of frauds plainly means an agreement *not* to be performed within the space of a year, and expressly and specifically so agreed. A *contingency* is not within it; nor any case that depends upon contingency. It does not extend to cases where the thing only *may* be performed within the year; and the act cannot be extended further than the words of it." And Mr. Justice Wilmot said that the rule laid down in 1 Salk. 280, above quoted, was the true rule. *Fenton* v. *Emblers*, 3 Burrow, 1278; *S. C.* 1 W. Bl. 353.

It thus appears to have been the settled construction of this clause of the statute in England, before the Declaration of Independence, that an oral agreement which, according to the intention of the parties, as shown by the terms of the contract, might be fully performed within a year from the time it was made, was not within the statute, although the time of

its performance was uncertain, and might probably extend, and be expected by the parties to extend, and did in fact extend, beyond the year.

The several States of the Union, in reënacting this provision of the statute of frauds in its original words, must be taken to have adopted the known and settled construction which it had received by judicial decisions in England. *Tucker* v. *Oxley,* 5 Cranch, 34, 42; *Pennock* v. *Dialogue,* 2 Pet. 1, 18; *Macdonald* v. *Hovey,* 110 U. S. 619, 628. And the rule established in England by those decisions has ever since been generally recognized in England and America, although it may in a few instances have been warped or misapplied.

The decision in *Boydell* v. *Drummond,* (1809) 11 East, 142, which has been sometimes supposed to have modified the rule, was really in exact accordance with it. In that case, the declaration alleged that the Boydells had proposed to publish by subscription a series of large prints from some of the scenes of Shakespeare's plays, in eighteen numbers containing four plates each, at the price of three guineas a number, payable as each was issued, and one number, at least, to be annually published after the delivery of the first; and that the defendant became a subscriber for one set of prints, and accepted and paid for two numbers, but refused to accept or pay for the rest. The first prospectus issued by the publishers stated certain conditions, in substance as set out in the declaration, and others showing the magnitude of the undertaking, and that its completion would unavoidably take a considerable time. A second prospectus stated that one number at least should be published annually, and the proprietors were confident that they should be enabled to produce two numbers within the course of every year. The book in which the defendant subscribed his name had only, for its title, " Shakespeare subscribers, their signatures," without any reference to either prospectus. The contract was held to be within the statute of frauds, as one not to be performed within a year, because, as was demonstrated in concurring opinions of Lord Ellenborough and Justices Grose, Le Blanc and Bayley, the

contract, according to the understanding and contemplation of the parties, as manifested by the terms of the contract, was not to be fully performed (by the completion of the whole work) within the year; and consequently, a full completion within the year, even if physically possible, would not have been according to the terms or the intent of the contract, and could not have entitled the publishers to demand immediate payment of the whole subscription.

In *Wells* v. *Horton*, (1826) 4 Bing. 40; *S. C.* 12 J. B. Moore, 177, it was held to be settled by the earlier authorities that an agreement by which a debtor, in consideration of his creditor's agreeing to forbear to sue him during his lifetime, promised that his executor should pay the amount of the debt, was not within the statute; and Chief Justice Best said: "The present case is clearly distinguishable from *Boydell* v. *Drummond*, where upon the face of the agreement it appeared that the contract was not to be executed within a year."

In *Souch* v. *Strawbridge*, (1846) 2 C. B. 808, a contract to support a child, for a guinea a month, as long as the child's father should think proper, was held not to be within the statute, which, as Chief Justice Tindal said, "speaks of 'any agreement that is not to be performed within the space of one year from the making thereof'; pointing to contracts the complete performance of which is of necessity extended beyond the space of a year. That appears clearly from the case of *Boydell* v. *Drummond*, the rule to be extracted from which is, that, where the agreement distinctly shows, upon the face of it, that the parties contemplated its performance to extend over a greater space of time than one year, the case is within the statute; but that, where the contract is such that the whole *may* be performed within a year, and there is no express stipulation to the contrary, the statute does not apply."

In *Murphy* v. *O'Sullivan*, (1866) 11 Irish Jurist (N. S.) 111, the Court of Exchequer Chamber in Ireland, in a series of careful opinions by Mr. Justice O'Hagan (afterwards Lord Chancellor of Ireland), Baron Fitzgerald, Chief Baron Pigot and Chief Justice Monahan, reviewing the English cases, held

that under the Irish statute of frauds of 7 Will. III, c. 12, (which followed in this respect the words of the English statute,) an agreement to maintain and clothe a man during his life was not required to be in writing.

In the recent case of *McGregor* v. *McGregor*, 21 Q. B. D. 424, (1888) the English Court of Appeal held that a lawful agreement made between husband and wife, in compromise of legal proceedings, by which they agreed to live apart, the husband agreeing to allow the wife a weekly sum for maintenance, and she agreeing to maintain herself and her children, and to indemnify him against any debts contracted by her, was not within the statute.   Lord Esher, M. R., thought the true doctrine on the subject was that laid down by Chief Justice Tindal in the passage above quoted from *Souch* v. *Strawbridge*. Lord Justice Lindley said: " The provisions of the statute have been construed in a series of decisions from which we cannot depart.   The effect of these decisions is that, if the contract can by possibility be performed within the year, the statute does not apply."   Lord Justice Bowen said: " There has been a decision which for 200 years has been accepted as the leading case on the subject.   In *Peter* v. *Compton*, it was held that ' an agreement that is not to be performed within the space of a year from the making thereof ' means, in the statute of frauds, an agreement which appears from its terms to be incapable of performance within the year." And each of the three judges took occasion to express approval of the decision in *Murphy* v. *O'Sullivan*, above cited, and to disapprove the opposing decision of Hawkins, J., in *Davey* v. *Shannon*, 4 Ex. D. 81.

The cases on this subject in the courts of the several States are generally in accord with the English cases above cited. They are so numerous, and have been so fully collected in Browne on the Statute of Frauds, (5th ed.) c. 13, that we shall refer to but few of them, other than those cited by counsel in the case at bar.

In *Peters* v. *Westborough*, 19 Pick. 364, an agreement to support a girl of twelve years old until she was eighteen was held not to be within the statute. Mr. Justice Wilde, in

delivering judgment, after quoting *Peter* v. *Compton, Fenton* v. *Emblers* and *Boydell* v. *Drummond,* above cited, said: "From these authorities it appears to be settled, that in order to bring a parol agreement within the clause of the statute in question, it must either have been expressly stipulated by the parties, or it must appear to have been so understood by them, that the agreement was not to be performed within a year. And this stipulation or understanding is to be absolute and certain, and not to depend upon any contingency. And this, we think, is the clear meaning of the statute. In the present case, the performance of the plaintiff's agreement with the child's father depended on the contingency of her life. If she had continued in the plaintiff's service, and he had supported her, and she had died within a year after the making of the agreement, it would have been fully performed. And an agreement by parol is not within the statute, when by the happening of any contingency it might be performed within a year."

In many other States, agreements to support a person for life have been held not to be within the statute... Browne on Statute of Frauds, § 276. The decision of the Supreme Court of Tennessee in *Deaton* v. *Tennessee Coal Co.,* 12 Heiskell, 650, cited by the defendant in error, is opposed to the weight of authority.

In *Roberts* v. *Rockbottom Co.,* 7 Met. 46, Chief Justice Shaw declared the settled rule to be that "when the contract may, by its terms, be fully performed within the year, it is not void by the statute of frauds, although in some contingencies it may extend beyond a year"; and stated the case then before the court as follows: "The contract between the plaintiff and the company was that they should employ him, and that he should serve them, upon the terms agreed on, five years, or so long as Leforest should continue their agent. This is a contract which might have been fully performed within the year. The legal effect is the same as if it were expressed as an agreement to serve the company so long as Leforest should continue to be their agent, not exceeding five years; though the latter expression shows a little more

clearly, that the contract might end within a year, if Leforest should quit the agency within that time."

In *Blanding* v. *Sargent*, 33 N. H. 239, the court stated the rule, as established by the authorities elsewhere, and therefore properly to be considered as adopted by the legislature of New Hampshire when reënacting the statute, to be that " the statute does not apply to any contract, unless by its express terms or by reasonable construction it is not to be performed, that is, incapable in any event of being performed, within one year from the time it is made "; and that " if by its terms, or by reasonable construction, the contract can be fully performed within a year, although it can only be done by the occurrence of some contingency by no means likely to happen, such as the death of some party or person referred to in the contract, the statute has no application, and no writing is necessary "; and therefore that an agreement by a physician to sell out to another physician his business in a certain town, and to do no more business there, in consideration of a certain sum to be paid in five years, was not within the statute, because " if the defendant had died within a year from the making of the contract, having kept his agreement while he lived, his contract would have been fully performed." The decisions in other States are to the same effect.    Browne on Statute of Frauds, § 277.

In *Hinckley* v. *Southgate*, 11 Vermont, 428, cited by the defendant in error, the contract held to be within the statute of frauds was in express terms to carry on a mill for a year from a future day; and the suggestion in the opinion that if the time of performance depends upon a contingency, the test is whether the contingency will probably happen, or may reasonably be expected to happen, within the year, was not necessary to the decision of the case, and cannot stand with the other authorities.    Browne on Statute of Frauds, § 279.

In *Linscott* v. *McIntire*, 15 Maine, 201, also cited by the defendant in error, an agreement to sell a farm at the best advantage, and to pay to the plaintiff any sum remaining after refunding the defendant's advances and paying him for his trouble, was held not to be within the statute of frauds;

Chief Justice Weston saying: "The sale did not happen to be made until a year had expired; but it might have taken place at an earlier period, and there is nothing in the case from which it appears that, in the contemplation of the parties at the time, it was to be delayed beyond a year. This clause of the statute has been limited to cases where, by the express terms of the agreement, the contract was not to be performed within the space of a year. And it has been held to be no objection that it depended on a contingency, which might not and did not happen, until after that time."

In *Herrin* v. *Butters*, 20 Maine, 119, likewise cited by the defendant in error, the contract held to be within the statute could not possibly have been performed within the year, for it was to clear eleven acres in three years, one acre to be seeded down the present spring, one acre the next spring, and one acre the spring following, and to receive in consideration thereof all the proceeds of the land, except the two acres first seeded down.

In *Broadwell* v. *Getman*, 2 Denio, 87, the Supreme Court of New York stated the rule thus: "Agreements which may be completed within one year are not within the statute; it extends to such only as by their express terms are not to be, and cannot be, carried into full execution until after the expiration of that time." The contract there sued on was an agreement made in January, 1841, by which the defendant agreed to clear a piece of woodland for the plaintiff, and to partly make a fence at one end of it, which the plaintiff was to complete, the whole to be done by the spring of 1842; and the defendant was to have for his compensation the wood and timber, except that used for the fence, and also the crop to be put in by him in the spring of 1842. The court well said: "As this agreement was made in January, 1841, and could not be completely executed until the close of the season of 1842, it was within the statute, and not being in writing and signed, was void. Upon this point it would seem difficult to raise a doubt upon the terms of the statute."

In *Pitkin* v. *Long Island Railroad*, 2 Barb. Ch. 221, cited by the defendant in error, a bill in equity to compel a railroad

company to perform an agreement to maintain a permanent
turnout track and stopping place for its freight trains and pas-
senger cars in the neighborhood of the plaintiff's property,
was dismissed by Chancellor Walworth upon several grounds,
the last of which was that, as a mere executory agreement to
continue to stop with its cars at that place, "as a permanent
arrangement," the agreement was within the statute of frauds,
because from its nature and terms it was not to be performed
by the company within one year from the making thereof.

In *Kent* v. *Kent*, 62 N. Y. 560, an agreement by which a
father, in consideration of his son's agreeing to work for him
upon his farm, without specifying any time for the service,
agreed that the value of the work should be paid out of his
estate after his death, which did not in fact happen until
twenty years after the son ceased work, was not within the
statute. Judge Allen, delivering the judgment of the Court
of Appeals, said : "The statute, as interpreted by courts, does
not include agreements which may or may not be performed
within one year from the making, but merely those which
within their terms, and consistent with the rights of the par-
ties, cannot be performed within that time. If the agreement
may consistently with its terms be entirely performed within
the year, although it may not be probable or expected that
it will be performed within that time, it is not within the
condemnation of the statute."

In *Saunders* v. *Kasterbine*, 6 B. Monroe, 17, cited by the
defendant in error, the contract proved, as stated in the opin-
ion of the court, was to execute a bill of sale of a slave when
the purchaser had paid the price of $400, in monthly instal-
ments of from $4 to $8 each, which would necessarily post-
pone performance, by either party, beyond the year.

In *Railway Co.* v. *Whitley*, 54 Arkansas, 199, a contract
by which a railway company, in consideration of being per-
mitted to build its road over a man's land, agreed to construct
and maintain cattle guards on each side of the road, was held
not to be within the statute, because it was contingent upon
the continuance of the use of the land for a railroad, which
might have ceased within a year. And a like decision was

made in *Sweet* v. *Desha Lumber Co.*, 56 Arkansas, 629, upon facts almost exactly like those in the case at bar.

The construction and application of this clause of the statute of frauds first came before this court at December term, 1866, in *Packet Co.* v. *Sickles*, 5 Wall. 580, which arose in the District of Columbia under the statute of 29 Car. II, c. 3, § 4, in force in the State of Maryland and in the District of Columbia. Alexander's British Statutes in Maryland, 509 ; *Ellicott* v. *Peterson*, 13 Maryland, 476, 487; Comp. Stat. D. C., c. 23, § 7.

That was an action upon an oral contract by which a steamboat company agreed to attach a patented contrivance, known as the Sickles cut-off, to one of its steamboats, and, if it should effect a saving in the consumption of fuel, to use it on that boat during the continuance of the patent, if the boat should last so long; and to pay to the plaintiffs weekly, for the use of the cut-off, three fourths of the value of the fuel saved, to be ascertained in a specified manner. At the date of the contract, the patent had twelve years to run. The court, in an opinion delivered by Mr. Justice Nelson, held the contract to be within the statute ; and said : " The substance of the contract is that the defendants are to pay in money a certain proportion of the ascertained value of the fuel saved at stated intervals throughout the period of twelve years, if the boat to which the cut-off is attached should last so long." " It is a contract not to be performed within the year, subject to a defeasance by the happening of a certain event, which might or might not occur within that time." 5 Wall. 594–596. And reference was made to *Birch* v. *Liverpool*, 9 B. & C. 392, and *Dobson* v. *Collis*, 1 H. & N. 81, in each of which the agreement was for the hire of a thing, or of a person, for a term specified of more than a year, determinable by notice within the year, and therefore within the statute, because it was not to be performed within a year, although it was defeasible within that period.

In *Packet Co.* v. *Sickles*, it appears to have been assumed, almost without discussion, that the contract, according to its true construction, was not to be performed in less than twelve years, but was defeasible by an event which might or

might not happen within one year.   It may well be doubted whether that view can be reconciled with the terms of the contract itself, or with the general current of the authorities. The contract, as stated in the fore part of the opinion, was to use and pay for the cut-off upon the boat "during the continuance of the said patent, if the said boat should last so long."   5 Wall. 581, 594; *S. C.* (Lawyer's Coöp. Pub. Co. ed.) bk. 18, pp. 552, 554.   The terms "during the continuance of" and "last so long" would seem to be precisely equivalent; and the full performance of the contract to be limited alike by the life of the patent, and by the life of the boat.   It is difficult to understand how the duration of the patent and the duration of the boat differed from one another in their relation to the performance or the determination of the contract; or how a contract to use an aid to navigation upon a boat, so long as she shall last, can be distinguished in principle from a contract to support a man, so long as he shall live, which has been often decided, and is generally admitted, not to be within the statute of frauds.

At October term, 1875, this court, speaking by Mr. Justice Miller, said: "The statute of frauds applies only to contracts which, by their terms, are not to be performed within a year, and does not apply because they may not be performed within that time.   In other words, to make a parol contract void, it must be apparent that it was the understanding of the parties that it was not to be performed within a year from the time it was made."   And it was therefore held, in one case, that a contract by the owner of a valuable estate, employing lawyers to avoid a lease thereof and to recover the property, and promising to pay them a certain sum out of the proceeds of the land when recovered and sold, was not within the statute, because all this might have been done within a year; and in another case, that a contract, made early in November, 1869, to furnish all the stone required to build and complete a lock and dam which the contractor with the State had agreed to complete by September 1, 1871, was not within the statute, because the contractor, by pushing the work, might have fully completed it before November, 1870.

*McPherson* v. *Cox*, 96 U. S. 404, 416, 417; *Walker* v. *Johnson*, 96 U. S. 424, 427.

In Texas, where the contract now in question was made, and this action upon it was tried, the decisions of the Supreme Court of the State are in accord with the current of decisions elsewhere.

In *Thouvenin* v. *Lea*, 26 Texas, 612, the court said : " An agreement which may or may not be performed within a year is not required by the statute of frauds to be in writing; it must appear from the agreement itself that it is not to be performed within a year." In that case, the owner of land orally agreed to sell it for a certain price, payable in five years ; the purchaser agreed to go into possession and make improvements; and the seller agreed, if there was a failure to complete the contract, to pay for the improvements. The agreement to pay for the improvements was held not to be within the statute ; the court saying : " There is nothing from which it can be inferred that the failure to complete the contract, (by reducing it to writing, for instance, as was stipulated should be done,) or its abandonment, might not occur within a year from the time it was consummated. The purchaser, it is true, was entitled by the agreement to a credit of five years for the payment of the purchase money, if the contract had been reduced to writing. But appellant might have sold to another, or the contract might have been abandoned by the purchaser, at any time ; and upon this alone depended appellant's liability for the improvements." See also *Thomas* v. *Hammond*, 47 Texas, 42.

In the very recent case of *Weatherford &c. Railway* v. *Wood*, 88 Texas, 191, it was held that an oral agreement by a railroad company to issue to one Wood annually a pass over its road for himself and his family, and to stop its trains at his house, for ten years, was not within the statute. The court, after reviewing many of the authorities, said : " It seems to be well settled that where there is a contingency expressed upon the face of the contract, or implied from the circumstances, upon the happening of which within a year the contract or agreement will be performed, the contract is not

within the statute, though it be clear that it cannot be performed within a year except in the event the contingency happens." " If the contingency is beyond the control of the parties, and one that may, in the usual course of events, happen within the year, whereby the contract will be performed, the law will presume that the parties contemplated its happening, whether they mention it in the contract or not. The statute only applies to contracts ' *not to be performed* within the space of one year from the making thereof.' If the contingency is such that its happening may 'bring the performance within a year, the contract is not within the terms of the statute; and this is true whether the parties at the time had in mind the happening of the contingency or not. The existence of the contingency in this class of cases, and not the fact that the parties may or may not have contemplated its happening, is what prevents the agreement from coming within the scope of the statute. Applying these principles to the case under consideration, we think it clear that the contract above set out was not within the statute. The agreement to give the pass and stop the trains was personal to Wood and his family. He could not transfer it. In case of his death within the year, the obligation of the company to him would have been performed, and no right thereunder would have passed to his heirs or executors. If it be held that each member of his family had an interest in the agreement, the same result would have followed the death of such member, or all of them, within the year. If the agreement had been to give Wood a pass for life, it would, under the above authorities, not have been within the statute; and we can see no good reason for holding it to be within the statute because his right could not have extended beyond ten years. The happening of the contingency of the death of himself and family within a year would have performed the contract in one case as certainly as in the other." 88 Texas, 195, 196.

In the case at bar, the contract between the railroad company and the plaintiff, as testified to by the plaintiff himself, who was the only witness upon the point, was that if he would furnish the ties and grade the ground for the switch at

the place where he proposed to erect a saw-mill, the railroad company would "put down the iron rails and maintain the switch for the plaintiff's benefit for shipping purposes as long as he needed it."

The parties may well have expected that the contract would continue in force for more than one year; it may have been very improbable that it would not do so; and it did in fact continue in force for a much longer time. But they made no stipulation which in terms, or by reasonable inference, required that result. The question is not what the probable, or expected, or actual performance of the contract was; but whether the contract, according to the reasonable interpretation of its terms, required that it should not be performed within the year. No definite term of time for the performance of the contract appears to have been mentioned or contemplated by the parties; nor was there any agreement as to the amount of lumber to be sawed or shipped by the plaintiff, or as to the time during which he should keep up his mill.

The contract of the railroad company was with, and for the benefit of, the plaintiff personally. The plaintiff's own testimony shows (although that is not essential) that he understood that the performance of the contract would end with his own life. The obligation of the railroad company to maintain the switch was in terms limited and restricted by the qualification "for the plaintiff's benefit for shipping purposes as long as he needed it"; and no contingency which should put an end to the performance of the contract, other than his not needing the switch for the purpose of his business, appears to have been in the mouth, or in the mind, of either party. If, within a year after the making of the contract, the plaintiff had died, or had abandoned his whole business at this place, or for any other reason had ceased to need the switch for the shipping of lumber, the railroad company would have been no longer under any obligation to maintain the switch, and the contract would have been brought to an end by having been fully performed.

The complete performance of the contract depending upon a contingency which might happen within the year, the con-

tract is not within the statute of frauds as an "agreement which is not to be performed within the space of one year from the making thereof."

Nor is it within the other clause of the statute of frauds, relied on in the answer, which requires certain conveyances of real estate to be in writing. The suggestion made in the argument for the defendant in error, that the contract was, in substance, a grant of an easement in real estate, and as such within the statute, overlooks the difference between the English and the Texan statutes in this particular. The existing statutes of Texas, while they substantially follow the English statute of frauds, so far as to require a conveyance of any "estate of inheritance or freehold, or for a term of more than one year, in lands and tenements," as well as "any contract for the sale of real estate, or the lease thereof for a longer term than one year," to be in writing, omit to reënact the additional words of the English statute, in the clause concerning conveyances, "or any uncertain interest of, in, to or out of" lands or tenements, and, in the other clause, "or any interest in or concerning them." Stat. 29 Car. II, c. 3, §§ 1, 4; Texas Rev. Stat. of 1879, arts. 548, 2464; 1 Paschal's Digest, arts. 997, 3875; *James* v. *Fulcrod*, 5 Texas, 512, 516; *Stuart* v. *Baker*, 17 Texas, 417, 420; *Anderson* v. *Powers*, 59 Texas, 213.

> *Judgment reversed, and case remanded to the Circuit Court, with directions to set aside the verdict and to order a new trial.*