## FRANKLIN v. MATOA GOLD MIN. CO.

(Circuit Court of Appeals, Eighth Circuit. December 28, 1907.)

No. 2,650.

1. **FRAUDS, STATUTE OF—SALES OF GOODS—CONTRACTS WITHIN THE STATUTE.**

    A statute of frauds applies equally to contracts of sale and contracts of barter or exchange, it being immaterial in what manner payment for the property to be transferred is to be made.

2. **SAME—COLORADO STATUTE—PAYMENT BY BUYER "AT THE TIME."**

    Under the Colorado statute of frauds (Mills' Ann. St. Colo. 1891, § 2025), which provides that every contract for the sale of any goods, chattels, or things in action for the price of $50 or more "shall be void, * * * third, unless the buyer shall, at the time, pay some part of the purchase money," a verbal contract to deliver stock of a corporation in part payment for services "thereafter to be rendered" is not taken out of the statute by the subsequent rendition of the services which is not a payment "at the time" within the exception of the statute nor a part performance which can validate the contract at law.

3. **SAME.**

    The performance by one party of that portion of a contract which is not within the statute of frauds will not validate the unexecuted part which is within the statute.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Frauds, Statute of, §§ 299–326.]

4. **SAME—OPERATION AND EFFECT OF STATUTE—DOCTRINE OF PART PERFORMANCE.**

    The doctrine of part performance by the buyer, such as paying the purchase price and the like, to take a contract out of the statute of frauds obtains only in equity, and has no place in an action at law for damages founded on the contract, nor is it under the better authority available in equity to render the contract enforceable, the buyer having a sufficient remedy at law to recover back the money paid or the value of the property delivered, or on a quantum meruit if payment was in services.

In Error to the Circuit Court of the United States for the District of Colorado.

Charles J. Hughes, Jr., and Charles W. Franklin (Harry B. Tedrow, on the brief), for plaintiff in error.

David P. Strickler and Tyson S. Dines (Dines, Whitted & Dines, on the brief), for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge. The plaintiff brought an action at law against the defendant corporation for breach of contract in failing to deliver 100,000 shares of the capital stock of the company, of the face value of $1 per share. The first count alleges that in January, 1904, at Colorado Springs, Colo., the defendant promised and agreed with Pence, Franklin & Babbitt, a firm of lawyers in said city, that it would pay them $25 per day "for services thereafter to be rendered by the said Charles W. Franklin, and the further sum of twenty-five dollars ($25) per day for each day's service thereafter to be rendered by the said Kurnal R. Babbitt, in and about prosecuting, defending, counseling, and advising the said defendant com-

pany in and about certain suits hereinafter described; the said sum of twenty-five dollars ($25) per day to be paid for each day when either the said Franklin or Babbitt were absent from their respective offices for and on account of the said business and litigation; and to deliver to the said copartnership fifty thousand (50,000) shares of the capital stock of the said defendant company." The complaint alleges that said services were duly rendered, and that portion of the contract requiring the payment of said $25 per day had been complied with by the defendant; but it had failed and refused to deliver said stock. It alleges that the claim sued for had been duly assigned, for a valuable consideration, to the plaintiff Franklin. Damage is laid under this count at $20,000.

The second count alleges a like contract between the defendant and another firm of lawyers, to wit, Lunt, Armit & Brooks, at Colorado Springs, Colo., on the same terms; the payment of the per diem to be made while the said Lunt or the said Brooks were so engaged, and for the delivery to the copartnership of 50,000 shares of the capital stock of the defendant company. Performance on the part of said Lunt, Armit & Brooks is alleged; and payment by the defendant of the $25 per diem as agreed is admitted, but default is charged in the delivery of the 50,000 shares of stock aforesaid. This claim was also assigned to the plaintiff by said Lunt, Armit & Brooks. The damage on this count is laid at $20,000. The answer denies the making of the alleged contract, and alleges that the matter of the $25 per diem had no connection whatever with the alleged agreement for the delivery of the shares of stock. Among the various special defenses pleaded, the defendant interposed the plea of the statute of frauds, in that the contract in question was not reduced to writing. As the decision of the case, predicated on the plea of the statute of frauds, is determinative of the right of recovery, it is unnecessary to consider the other matters of defense tendered by the answer. The replication denied that the agreement or understanding with reference to said per diem pay had no connection with the agreement for the delivery of the shares of stock; "but plaintiff alleges and states the fact to be that under the agreement alleged in the complaint, the said per diem compensation and the capital stock together were to be the consideration for the services thereafter to be rendered."

At the trial to a jury the following occurred: Mr. Dines, of counsel for defendant, stated that the contract was not in writing and was within the statute of frauds;

"The Court: The replication does not deny that? Mr. Dines: In what we claim is an evasive way, so as not to properly deny it. That is what I raise—that the replication does not deny that fact; the contract is not in writing. The Court: Does the plaintiff propose to offer proof that the agreement was a written contract—the contract as set forth in the complaint? Mr. Hughes (of counsel for plaintiff): No, your honor. We will offer to prove in this connection every matter alleged in the replication; we want it to be considered that way; I suppose it would be. By Mr. Franklin we would show that it was done, and in addition the correspondence which I stated in my statement—that ought to be considered. We do not claim that it was a formal written contract, made at the time; we never have said that. We think it is enough, even if

this was within the statute, to take it out by virtue of what is alleged in the replication; and the things which I have stated to the jury we will prove—in my opening statement."

Upon this statement the trial court directed a verdict for the defendant. We are of opinion that the court was warranted in treating the statement of plaintiff's counsel as an admission that the contract sued on was not in writing. It was either in writing or not in writing. It was not claimed to have been part one and part the other. But the distinct answer was that it was not in writing; and it is clear that what the plaintiff relied upon was the allegation in the replication of performance on the part of the plaintiff's assignors. In his argument to this court it is contended that the Circuit Court erred in directing a verdict on said admission of counsel, because he suggested to the court that there was correspondence between the parties. What was the correspondence relied upon? Was it claimed to be a "memorandum of such contract in writing?" If so, such contention is utterly inconsistent with the statement that the contract was not in writing. The colloquy between court and counsel merely refers back to some statement theretofore made to the jury respecting the correspondence; but what that statement was the bill of exceptions does not disclose. Most certainly before counsel can be heard to complain of the action of the court in proceeding to judgment notwithstanding he proposed to show certain things by correspondence, he should have disclosed to the court what that correspondence contained; and before this court could review it the bill of exceptions should set it forth.

The statute of Colorado (chapter 55, § 2025, vol. 1, Mills' Ann. St.) declares that:

"In the following cases every agreement shall be void, unless such agreement, or some note or memorandum thereof, be in writing, and subscribed by the party charged therewith:  *  *  *

"Fourth. Every contract for the sale of any goods, chattels, or things in action, for the price of $50.00 or more, shall be void unless: First, a note or memorandum of such contract be made in writing and be subscribed by the parties to be charged therewith; or, second, unless the buyer shall accept and receive part of such goods, or the evidence of some of them, or such things in action; or, third, unless the buyer shall, at the time, pay some part of the purchase money."

The first contention on behalf of the plaintiff is that the transaction in question was not a contract for the sale of goods, or chattels, or things in action, within the terms of the statute. Without prolonging the opinion in a review of the authorities touching this question, it is sufficient to say that the decided weight of authority is that such statute, in its application, makes no distinction between contracts of barter or exchange on the one hand, and of sales on the other. A contract is no less within the statute "because something other than money is to be given in return for the goods; contracts of barter being regarded, so far as the statute is concerned, as contracts of sale." Browne on Statute of Frauds (5th Ed.) c. 14, p. 390, also section 76; Dowling v. McKenney, 124 Mass. 479, 480; Raymond v. Colton, 104 Fed. 219, loc. cit. 224, 43 C. C. A. 501; Bennett v. Hull, 10 Johns. 364; Howard v. Harris, 8 Allen (Mass.) 297. It is well established,

and the generally recognized rule of construction of such statutes, that a contract for the sale of stocks at a future date is within the statute. Smith on the Law of Fraud, etc. (1907) § 373; North v. Forest, 15 Conn. 400; Mayer v. Child, 47 Cal. 142; Meehan v. Sharp, 151 Mass. 564, loc. cit. 566, 24 N. E. 907; Mussel v. Cooke, Pre. Ch. 533; Crull v. Dodson, Sel. Cas. in Chancery, 41. It being conceded that the contract in question was not evidenced by a memorandum made in writing and subscribed by the parties to be charged therewith, it is void, unless the buyer—that is, the plaintiff's assignors—accepted and received part of the stock, or the evidence of such things in action, or unless the buyer at the time paid some part of the purchase money.

There being no pretense of claim that plaintiff's assignors received any part of the things—the stocks—bartered, or the evidence of any of them, within the meaning of this clause of the statute, the right of action turns upon the only remaining exception, "unless the buyer shall at the time pay some part of the purchase money." The statute in this respect is strikingly different from section 17 of the old English statute of frauds, which prescribed: (1) a written contract or memorandum; (2) acceptance and actual receipt of the property sold; (3) payment of part or all of the purchase price; and (4) payment of earnest money. Under that statute no time was fixed when part of the purchase money should be paid, to avoid the infirmity of the verbal agreement. Whereas, under the Colorado statute, the positive requirement is that the part payment of purchase money must be made at the time of the making of the contract. And this provision differentiates this statute from that of many of the states. Recognizing the force of this requirement counsel for the plaintiff suggested in argument that the services, at least a part of them, rendered by the assignors were contemporaneous with the making of the contract. As the case went off on the pleadings and the admission of counsel that the contract was not in writing, recourse must be had to the allegations of the pleadings for the determination of this question of fact. The object of pleading is to define the altercations of the parties. It is to enable the judge, clearly and separately, to ascertain the matters of fact to be tried and to which the law of the case is to be applied. The allegation of the complaint is that the defendant company promised and agreed to pay said sum of $25 "per day for each day's service *thereafter to be rendered*" (italics ours) by the assignors of the plaintiff. The shares of capital stock were, of course, to become deliverable for services thereafter to be rendered. As already shown, the first paragraph of the replication is a reaffirmance that, "under the agreement alleged in the complaint, said per diem compensation and the capital stock together were to be the consideration for the services *thereafter to be rendered*." (Italics ours.) In the very nature of the case, the buyer did not at the time of the making of the contract pay some part of the purchase money. Looking to the explicit terms of the Colorado statute, it precludes a recovery, because the statute declares the alleged contract sought to be enforced to be void. As is too frequently the case, some courts by mere judicial construction have sought to enlarge the operation of the statute in such fashion as to place its plain terms more or less in the field of uncertainty, in sub-

jecting its application to the temptation of the strained conscience of the litigant seeking to avoid it by post mortem testimony.

It is the accepted fact that the provision in question of the Colorado statute is a transcript of the corresponding statute of the state of New York; and therefore reference to the construction placed thereon in respect of the time of such payment by the highest court of that state is permissible. In Walrath v. Ingles, 64 Barb. (N. Y.) 265, the defendant agreed to exchange clover seed, in excess of the value of $50, for a barrel of sugar and a given amount of money. The barrel was accordingly filled with sugar, and the price per barrel at which it was to be accepted by the defendant was fixed at the time of the making of the verbal contract, but the sugar itself was not weighed nor physically delivered to the defendant. Of this the court pertinently said:

"To allow the parties to agree, by parol, upon a mode of payment to be completed afterwards, would let in the very 'mischief which the statute intended to avoid."

In Hunter v. Wetsell, 57 N. Y. 375, 15 Am. Rep. 508, there was a verbal contract for the purchase of hops, of the value of over $50, but no part of the price was paid at the time. Thereafter the buyer, at two different times, made payments upon the purchase price, but there was no proof of what occurred when the payments were made. In holding that this was not a compliance with the statute the court said:

"A contract for the sale of personal property for the price of $50 or more is declared void unless one of three things be done, the last of which is payment by the buyer, at the time, of part of the purchase money. Payment afterwards will not do. The payment must be made when the contract is made. Such is the plain language of the statute. * * * All that took place afterwards was a payment of $300 towards the hops. If this could be called a payment at the time of making the contract, within the meaning of the statute, then this provision of the statute serves no purpose, as every payment subsequently made, to apply upon the contract, would render it binding within the statute, and the provision requiring payment at the time would be nullified. A payment not made at the time can never, under any circumstances, satisfy the requirement of the statute. But when a contract for the sale of personal property, valid at common law, is made, and the buyer afterwards pays expressly to bind the contract, the parties then reaffirm or restate the terms of the contract, and their minds then meet so as to make a contract, the statute is undoubtedly satisfied."

Further on, the court summarized what conduct subsequent to the making of the contract might take the case out of the operation of the statute: (1) When the parties subsequently meet, and for the express purpose of then complying with the statute, payment is made by the purchaser upon the contract at the request of the seller; and (2) when the parties subsequently meet and substantially restate, reaffirm, or renew the terms of the contract, so as then and there by a meeting of their minds to make a contract on such payment. The subsequent rulings of the Court of Appeals of New York touching this matter have been so thoroughly and fairly reviewed and presented in opinions by Judge Wallace, of the Court of Appeals of the Second Circuit, who, from long experience and study, was quite familiar with the decisions of the state court, as to render it sufficient for us to refer to those opinions. In Raymond v. Colton, 104 Fed. 219, 43 C. C. A.

158 F.—60

501, the plaintiff and defendant owned practically all the shares of stock of a company, and plaintiff being indebted to defendant, the latter held as security therefor plaintiff's stock. Upon differences arising between them it was agreed that the defendant should buy the plaintiff's stock, paying the difference between its value and the plaintiff's said indebtedness, in consideration of the plaintiff resigning from the office he held in the company, and also obtaining the resignation of his brother and father. After some delay the plaintiff delivered the resignations, stating at the time that it was "in compliance and fulfillment of the trade that we have made," and then calling for a settlement for the stock. Although the defendant received and retained the resignations, the court held that the contract was void under the statute because there was no delivery or part payment at the time of making the contract. After reviewing the state decisions the learned Judge said:

"The action was not tried or submitted to the jury upon the theory that the shares were the things purchased, or the consideration of the defendant's promise. It was assumed upon the trial that there had been no acceptance of the shares by the buyer, and upon this theory the certificate was tendered to the plaintiff upon the trial. There was no evidence that anything had been said or done by the parties, either at the time of the contract or subsequently, which had the effect of changing the relations of pledgor and pledgee. Unless the acceptance of the resignations was evidence of an acceptance of the shares, there was no evidence in the case to show that the defendant had accepted and received some part of the goods, or the evidences, or some part of them, of the things in action, which were the subject of purchase. The trial judge adopted the theory of the complaint, and treated the delivery of the resignations as the consideration for the defendant's promise to purchase. They were in part the consideration of that promise, and no other effect can be given to the delivery of the resignations than as a part payment of the consideration or purchase money. As there was no restatement or reaffirmation of the terms of the prior oral agreement between the parties at the time of the delivery of the resignations, except by implication, and as they were not delivered for the express purpose of complying with the statute and validating the contract, it must be held that there was no part payment at the time of the contract, within the meaning of the statute as construed by the highest courts of the state. Irrespective of this consideration, if the defendant should be deemed to be the buyer, there was no part payment by him, such as there was having been made by the seller. We conclude, therefore, that the contract was void under the statute of frauds."

After the case was remanded for a new trial and came on for retrial, as is painfully frequent after the contending plaintiff has been advised by the reviewing court wherein his evidence was deficient, he undertook to supply the missing link by testifying that the original agreement was made on August 3d, and that on August 15th, when he delivered the resignations to the defendant, he said: "I am going to give you my resignation, my father's resignation, and my brother's resignation, to take effect to-night at six o'clock, in compliance and fulfillment of the trade that we made on August 3d;" that defendant asked plaintiff if the latter would not regret it, and the reply was in the negative; that afterwards, on August 19th, plaintiff's attorney called on defendant, and inquired if he wanted anything further, and defendant said he wanted the plaintiff's resignation as trustee, and this was subsequently sent to him by mail. The Circuit Court, notwithstanding this evidence, directed a verdict for the defendant on the ground that

the proof did not take the case out of the interdiction of the statute of frauds. On a second appeal (reported in 114 Fed. 863, 52 C. C. A. 382) the court affirmed the judgment, holding that the transaction of August 15th and thereafter was a payment under the void contract of August 3d, and was not a payment made for the purpose of validating the prior void contract. The court reviewed in extenso all the later decisions of the state Court of Appeals, including Jackson v. Tupper, 101 N. Y. 515, 5 N. E. 65, in which that court held a subsequent payment insufficient to validate a verbal contract for the reason that "by implication they recognized that it (the old contract) was still existing, but they did not reassert its terms so as to agree upon a new one of essentially the same purport. * * * Upon principle, and logically, there can be no payment made at the time of the contract unless it is made as part of the negotiations, or at the time when the negotiation is concluded; otherwise the statutory provision would be nugatory." There is no sufficient allegation in the replication of the plaintiff to bring the payment of the $25 per diem within the foregoing rule, to validate the contract.

The case at bar, as disclosed by the pleadings, aptly illustrates the necessity of a strict adherence to the plain terms of the statute in question. In its answer the defendant insists that the matter of the payment of $25 per day was an independent contract, separate and apart from that asserted by the plaintiff in respect of the delivery of the shares of stock. This the plaintiff denies. Had the contract been reduced to writing it would have settled this contention and taken it out of the vexing uncertainty of conflicting statements of the parties litigant.

The ultimate position of plaintiff's counsel is that the case is taken out of the operation of the statute by reason of the performance of the contract on the part of the plaintiff's assignors. There is much of illogical assertion by courts touching this question of part performance. In many cases there is an utter confusion of part performance and entire performance. Of course, when a contract is performed on both sides there is no longer a contract to be executed and enforced. In such case the statute of frauds has no application. Without pursuing this question, it is sufficient to say that both the weight of reason and authority is that the doctrine of part performance by the buyer, such as paying the purchase price, and the like, obtains only in equity, and has no place in an action at law founded on the contract for damages. Kling v. Bordner, 65 Ohio St. 86, 61 N. E. 148, 152; Smith v. Phillips, 69 N. H. 470, 43 Atl. 183, 184; Butler v. Shehan, 61 Ill. App. 561; Nally v. Reading, 107 Mo. 350–355, 17 S. W. 978; Koch v. Williams, 82 Wis. 186, 52 N. W. 257; Ballantine v. Yung Wing (C. C.) 146 Fed. 621; Clark v. Davidson, 53 Wis. 317, 10 N. W. 384; Smith on the Law of Fraud, etc. (1907) § 348, p. 414; Warner v. Texas & Pacific Railway Company, 54 Fed. 922, 4 C. C. A. 673. While the last-named case was reversed by the Supreme Court (164 U. S. 418, 17 Sup. Ct. 147, 41 L. Ed. 495), it did not touch the question under consideration. The decision was placed solely on the ground that the contract was not within the operation of the one-year statute of frauds, as it might have been performed within one year.

In Clark v. United States, 95 U. S. 542 (24 L. Ed. 518), the court said:

"We do not mean to say that, where a parol contract has been wholly or partially executed and performed on one side, the party performing will not be entitled to recover the fair value of his property or services. On the contrary, we think that he will be entitled to recover such value as upon an implied contract for a quantum meruit. * * * The special contract being void, the claimant is thrown back upon the rights which result from the implied contract."

In Dunphy v. Ryan, 116 U. S., loc. cit. 497, 6 Sup. Ct. 488 (29 L. Ed. 703), the court said:

"It is well settled that when one person pays money or performs services for another upon a contract void under the statute of frauds, he may recover the money upon a count for money paid to the use of defendant at his request, or recover for the services upon the quantum meruit count."

Further on the court said:

"But defendant's counsel further insist that there has been such a part performance of the contract as entitles the defendant to equitable relief, on the ground that it would be a fraud on him not to enforce the contract. The case, as stated in the defendant's answer, is not, either in the averments or prayer, one for equitable relief. There is no averment, and no proof was offered, that the refusal of the plaintiff to accept the deed and pay the purchase price of the land has subjected the defendant to any loss. * * * The mere breach of a verbal promise for the purchase of lands will not justify the interference of a court of equity. There is no fraud in such refusal. The party who so refuses stands upon the law, and has a right to refuse. * * * If the mere refusal of a party to perform a parol contract for the sale of lands could be construed to be such a fraud as would give a court of equity jurisdiction to enforce it, the statute of frauds would be rendered vain and nugatory. The defendant knew or ought to have known that the statute requires such a contract as the one he seeks to enforce to be evidenced by writing. That he did not exact a contract in writing is his own fault. Courts of equity are not established to relieve parties from the consequences of their own negligence or folly."

In Purcell v. Miner, 4 Wall. 513, 18 L. Ed. 435, Mr. Justice Grier, speaking to this question, said:

"A mere breach of a parol promise will not make a case for the interference of a chancellor. It is plain that a party who claims such interference has the burden of proof thrown on him. He knows that the law requires written evidence of such contracts, in order to their validity. He has acted with great negligence and folly who has paid his money without getting his deed. When he requests a court to interfere for him, and save him from the consequences of his own disregard of the law, he should be held rigidly to full, satisfactory, and indubitable proof."

Further on he said:

"The mere payment of the price, in part or in whole, will not, of itself, be sufficient for the interference of a court of equity, the party having a sufficient remedy at law to recover back the money."

This must be so under such statute as the one in question where the action is based on a contract not in writing, and unassisted by either of the exceptions named therein. It is a solecism to assert an action at law predicated of a void contract. The discussion of this question by Depue, Judge, in McElroy v. Ludlum, 32 N. J. Eq. 828, is not only instructive, but exact and unanswerable in its logic.

The plaintiff sued upon a contract for services rendered the defendant, which was within the statute of frauds. The learned judge said:

"The suit is in substance an action to enforce a legal demand. It must, therefore, be decided upon the legal principles by which the right of a party to recover compensation for services rendered, under a contract invalid by the statute of frauds, is determined. Performance of a contract invalid by the statute will not validate the contract so as to enable a party to enforce it by an action upon the contract. Unless in cases specially provided for in the statute, part performance will not validate the contract at law. The dictum that part performance will make valid a contract invalid by the statute of frauds is exclusively the creature of equity, and applies only to contracts relating to lands, and does not extend to contracts relating to other matters. Birckhead v. Cummins, 4 N. J. Law, 44–50; Brittain v. Rossiter, 18 Am. Law Reg. (N. S.) 716. The only remedy in such cases is by an action on a quantum meruit to recover the value of the services."

He then adverted to the older rulings of some highly respected courts, holding that in a quantum meruit action the contract might be employed in ascertaining the measure of recovery, but had been later overruled by them because of the great abuses and harsh results to which it led. He then said:

"The pretext upon which evidence of the class referred to has sometimes been admitted is that its admission was necessary to prevent fraud. The argument is that the statute was designed to prevent fraud, and should not be made the means of perpetrating a fraud. But in such cases it is not necessary, in order to prevent fraud, to give the contract effect practically by means of an action. The law accords the injured party full compensation for the value of the consideration he has given on the faith of the contract which his adversary repudiates. However uncertain and incapable of precise valuation the services, rendered under an executory contract invalid by the statute, may have been when the contract was made, their value has ceased to be uncertain at the time when the action is brought. The services having then been performed, are then capable of exact ascertainment, and their value can easily be estimated upon such evidence as is ordinarily submitted to a jury upon any other issue involving the value of services. Further than this we cannot go, without giving the party the benefit of his contract in his action, although the statute declares that it shall not be enforced by an action. The policy of the statute is to prevent frauds which may be accomplished by setting up contracts of the interdicted class, by parol testimony. That policy is infringed upon equally, whether the contract be used for the purpose of influencing the amount of the recovery, or be made the foundation of the action. Experience shows the danger incident to frittering away, under plausible pretexts, the provisions of a statute which has repeatedly been declared to be one of the wisest laws upon the statute book."

The leading case in the English courts is that of Earl of Falmouth v. Thomas, 1 Cromp. & M. 88. The action was to recover the value of crops under a verbal agreement for a lease of the lands on which the crops were made. It was held that the contract was within the statute, although the defendant had accepted and received the crops, and that the plaintiff was only entitled to recover their value in indebitatus assumpsit. Lord Lyndhurst said:

"Admitting that the defendant is to pay for the crops, he ought to pay for them, not upon the terms and footing of the bargain and sale, but upon a quantum meruit; the crops at the time of the bargain and sale were, upon these pleadings, an interest in land; and to allow the plaintiff to recover upon this bargain and sale, and to have the price regulated by it, would be in direct opposition to the statute, because it would be giving effect to an action upon a verbal contract for an interest in lands."

It is no answer to the foregoing that the contract pertained to an interest in land. Browne on the Statute of Frauds (5th Ed.) par. 115, adverting to this section of the statute respecting contracts affecting interest in lands and those under the seventeenth section of the statute respecting personal contracts, says:

"There seems to be no reason to attribute to the latter phraseology any force, or to draw from it any inferences, different from those which attend the construction of the former. 'Allowed to be good' appears to mean considered good for the purposes of recovery upon it; and the remaining portions of the two sections in question being very similar, and the policy of the two being very clearly the same, we should not be justified in laying much stress upon the change of phrase. Many of our states, in adopting the substance of it, have disregarded the difference alluded to, and put the sales of goods into the same section with other contracts, extending to them a common provision, that no action shall be brought," etc.

In so far as the per diem part of the contract in question is concerned, it was not necessarily within the statute of frauds. Not only might it have been fully performed within the year, but it might have been performed by the designated attorney giving one day's separate attention thereto. There was no requirement that this special service should be rendered for over one day, as no given number of days was prescribed. Warner v. Texas & Pac. Ry. Co., 164 U. S. 418, 17 Sup. Ct. 147, 41 L. Ed. 495. As that part of the contract was fully discharged, and the only feature of the verbal contract within the statute is that which pertained to the shares of capital stock, which had not been performed by the vendor, it seems illogical and absurd to say that the executed part of the contract not within the statute could be regarded as such performance as to take the void part out of the statute. "If B.; who by the terms of the contract is to do an act which is not within the statute, performs the contract fully on his part, while A., who by the terms of the contract was to perform an act which is one of those named in the statute, has not performed on his part, the contract is within the statute. * * * This view is generally taken both in law and equity." Page on Contracts, vol. 2, par. 716.

It results that the judgment of the Circuit Court must be affirmed.