## BOWE v. WRIGHT.

(Circuit Court of Appeals, Eighth Circuit. June 30, 1922.)

No. 5860.

1. **Exchange of property ⬡⟶6—Delivery of third party's bond for deed pursuant to contract held performance.**

   Where plaintiff agreed to convey his land in Colorado to defendant, and defendant agreed to deliver to plaintiff a bond of a surety company, in which this company obligated itself to convey land in Mexico to plaintiff, defendant's delivery of such a bond constituted a full performance.

2. **Exchange of property ⬡⟶6—Strict performance as to kind of bond for deed waived by acceptance.**

   Where a contract provided that plaintiff was to receive a bond for a warranty deed, the acceptance by plaintiff of a bond requiring the conveyance of a good title, free and clear of all liens and incumbrances, was a waiver of any right to a bond for a warranty deed.

3. **Exchange of property ⬡⟶6—Plaintiff, agreeing to accept third party's bond for deed in action against defendant, not entitled to object to impossibility of third party's performance.**

   Where pursuant to a contract plaintiff conveyed land in Colorado, and defendant delivered a bond of a surety company, in which this company obligated itself to convey land in Mexico to plaintiff, plaintiff having stipulated to look to the surety company alone for performance of the obligation to convey, in an action against defendant for the value of the Mexican land, the fact that lawless conditions in Mexico made it impossible to deliver a good title to the Mexican land was of no avail.

4. **Trial ⬡⟶176—Error to direct verdict for defendant on defendant's opening statement.**

   Where plaintiff moved for a directed verdict on defendant's opening statement, it was error to direct a verdict for defendant.

5. **Trial ⬡⟶109—Verdict may be directed against party on his opening statement.**

   The trial court may direct a verdict against a party on his opening statement.

6. **Trial ⬡⟶176—Motion for judgment on opening statement held not waiver of right to jury trial.**

   Plaintiff's motion for a judgment on defendant's opening statement was not a waiver of plaintiff's right to a jury trial.

In Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Action by Arthur E. Bowe against George G. Wright, doing business as the Continental Land Company. Judgment for defendant, and plaintiff brings error. Reversed, and new trial directed.

Henry Trowbridge, of Denver, Colo., for plaintiff in error.

Grant I. Rosenzweig, of Kansas City, Mo. (Harry S. Silverstein and G. Dexter Blount, both of Denver, Colo., on the brief), for defendant in error.

Before CARLAND, Circuit Judge, and YOUMANS and JOHNSON, District Judges.

JOHNSON, District Judge. Plaintiff in error in this court was the plaintiff in the court below. In his complaint the plaintiff alleged that on the 22d of August, 1913, he was the owner of a certain described section of land situated in Cheyenne county, state of Colorado;

that on or about said day he made and entered into a contract with the defendant, wherein he (the plaintiff) agreed to sell and convey said land to the defendant for and at the agreed price and value of $8,000; that the defendant in consideration thereof agreed to convey to plaintiff by a good and sufficient warranty deed certain described lands in the state of Vera Cruz, Mexico, also at the agreed price and value of $8,000. It is alleged that on the 28th of October, 1913, plaintiff conveyed his said land to the defendant. It is further alleged in the complaint that, to induce the plaintiff to enter into said agreement, the defendant represented to the plaintiff that he was the owner of the said Mexican lands, and—

"That he was lawfully seized in his own right of a good and indefeasible estate in fee simple therein, and had good right, full power, and lawful authority to grant, bargain, sell, and convey the same in form and manner aforesaid. That said representations were false, and were made with intent to deceive the plaintiff, and induce him to make the trade alleged, to his injury, and plaintiff relied thereon, and did thereby make such trade, to his injury. That the defendant was not the true, lawful, nor rightful owner of said hereinbefore described land in said Mexico, nor was he lawfully seized in his own right of a good indefeasible estate in fee simple therein, nor had he good right, full power, nor lawful authority to grant, bargain, sell, and convey the same in the form and manner aforesaid."

Also:

"That the republic of Mexico now is, and for many years has been, in a state of anarchy, revolution, internecine war, and confusion, having no settled nor stable government of its own, but claiming and exercising arbitrarily, and without right or process of law, full powers of confiscation of property within its limits and boundaries, without compensation, and that only Mexicans by birth or naturalization and Mexican corporations can or could acquire or hold property therein, except by abandoning their allegiance to their own government and becoming naturalized citizens of the republic of Mexico. That the Mexican government as constituted is inimical to foreigners, and especially to American citizens, and loses no opportunity to confiscate their property in Mexico, arbitrarily, without right or process of law, and without compensation made therefor, and that an American citizen cannot be nor live in Mexico, except in danger of deportation or loss of his life, and by reason of the premises, no title to real property in the republic of Mexico is or can be of any validity, force, or effect. That, though duly demanded, said defendant has hitherto failed, neglected, and refused in any way [to] perform or comply with said agreement in any way, or at all, and still does fail, neglect, and refuse to pay plaintiff for said land so sold and conveyed to the defendant as aforesaid, all to the great damage of the plaintiff, in, to wit, the full sum of eight thousand dollars."

For a second cause of action it is alleged in the complaint:

"That on the 28th day of October, 1913, the defendant had and received of the moneys of the plaintiff, the sum of eight thousand dollars for the use and benefit of the plaintiff, which sum the defendant promised and agreed to repay to the plaintiff, but which he has not repaid, nor any part thereof."

In his answer the defendant denied the allegations of the second cause of action, and also also of the allegations of the first cause of action, except it was admitted that the Colorado land described in the complaint had been conveyed to the defendant, that the defendant was not the owner of the Mexican lands described in the complaint, and—

"That the republic of Mexico now is and has been for many years in a state of anarchy, revolution, and confusion, having no settled nor stable government, but claiming and exercising arbitrarily, and without right or process of law, full powers of confiscation of property within its limits and boundaries, without compensation, and that the Mexican government, as constituted, is inimical to foreigners, and especially to American citizens."

As an affirmative defense to the first cause of action the defendant set out a copy of the contract between the parties referred to in the complaint. This contract is in form an application by plaintiff to purchase the Mexican land, and is in effect an offer by him (subsequently accepted by the defendant) to exchange his Colorado land for the land in Mexico—each piece being valued at $8,000—upon the terms and in the manner mentioned in the application. The application or offer contains the following provision:

"Upon such approval"—that is, the acceptance by the defendant of plaintiff's offer to exchange the lands described in the complaint on the terms contained in the application—"said first party [the defendant] will mail or send to me [the plaintiff] a bond in a penal sum equal to the total of all amounts herewith, heretofore and hereafter paid on the purchase price aforesaid, duly executed by the Mexico Land Securities Company, a corporation, of Kansas City, Missouri, securing to me the said abstract and conveyance of the land selected as aforesaid, which bond shall be conditioned in accordance with, or (at the election of the Securities Company, more favorably to me) within the terms set out in this instrument, and not otherwise. The mailing or sending of bond aforesaid shall be complete performance by the first party of all obligation resting upon the first party under this instrument, and thereafter I shall look to the said Securities Company alone, according to the obligation of said Securities Company as expressed in its bond. On receipt of said bond I will mail acknowledgment thereof over my signature to said Securities Company. * * * The intent is that, if I fail in any part on my side, all rights on my side shall end, without recourse by me of any kind whatsoever, but that, in full discharge of its [his] whole obligation, the first party will furnish me said bond, which bond, if and after I shall have fully performed, shall firmly secure to me from the Securities Company the abstract and conveyance of the lands purchased."

The application also contains the following stipulation:

"After full payment by me of the entire purchase price and all deferred parts and interest thereof, and the amount of taxes on said selected lands from date hereof to execution of deed (to be ascertained by average covering a larger tract, if not otherwise definitely fixed), and the usual expense, stamps, and taxes pertaining to the making and recording of deed, and after I render, at such place as said Securities Company, or other person in its behalf, may direct, such co-operation, if any, as may be necessary for making said deed, and after satisfaction and delivery back of the bond hereinafter mentioned (all of which several things I agree to pay and perform), I will then be entitled to receive an abstract, showing all recorded instruments affecting said selected land, together with a duly executed warranty deed, conveying to me good title to said selected lands, free and clear of all liens and incumbrances whatsoever."

The bond referred to in the application is set out in the answer. It is in effect a bond for a deed in the penal sum of $8,000, containing the following provision—the only one material here:

"And whereas, after full payment of the entire purchase price and all deferred parts and interests thereof, and the amount of taxes on said selected lands from date hereof to execution of deed (to be ascertained by average covering a larger tract, if not otherwise definitely fixed), and the usual ex-

pense, stamps, and taxes pertaining to the making and recording of deed, and after the purchaser renders at such place as the Mexico Land Securities Company, hereafter called Securities Company, or other persons in its place, may direct such co-operation, if any, as may be necessary for making said deed, and after satisfaction and delivery of this bond back to said Securities Company (all which several things the purchaser agrees to pay and perform), it is agreed that the said purchaser will then be entitled to an abstract showing all recorded instruments affecting said selected lands, together with a duly executed deed conveying to the purchaser good title to said selected lands, free and clear of all liens and incumbrances whatsoever."

It is alleged in the answer that on the 28th day of October, 1913, the bond of the Mexico Land Securities Company was delivered to and accepted by the plaintiff, and that ever since said time the said Securities Company has been ready, willing, and able to do its part in conveying the Mexican land to the plaintiff. It is further alleged that the plaintiff has failed and refused to pay the taxes assessed against said land since the date of his said application, and has failed and refused to pay the expenses necessary to secure the conveyance of said land to him. In that connection it is alleged in the answer:

"That the conveyance of land in the said republic of Mexico requires the personal presence before the notary public in the said republic of Mexico, charged by its laws with matters of conveyance at least two persons, namely, one person being or representing the buyer, and the other person being or representing the seller, both of whom must subscribe their names in the official books kept by said notary public in the republic of Mexico, and if the buyer and seller are not present in Mexico in person, their respective substitutes or representatives must be duly accredited by letters of authority from the respective parties to represent them respectively before the said notary public in Mexico. That the said Mexico Land Securities Company has at all times been ready, able, and willing to do its part to consummate the conveyance of said Mexican lands to the said plaintiff, but, on the contrary, the said plaintiff, although often requested and although demand was often made on him that he co-operate in the making of conveyance as aforesaid, has nevertheless failed and refused either so to be present in person or by accredited representative in the republic of Mexico before the said notary public, to accept the said conveyance or to co-operate in the making thereof."

The plaintiff demurred to the affirmative defense set up in the answer on the ground that the matters therein stated did not constitute any defense to plaintiff's complaint. The demurrer was overruled and exception taken. In his reply plaintiff admitted that he signed the application to exchange his Colorado land for the Mexican land, but, excepting this admission, he denied every allegation of the affirmative defense contained in defendant's answer.

At the trial of the cause, before the jury was impaneled, counsel for plaintiff moved for judgment on the pleadings. This motion was denied, and an exception taken. The rulings of the trial court upon the demurrer and upon the motion for judgment upon the pleadings are assigned as error. As the demurrer and the motion for judgment both raise the same question—that is, the sufficiency of the affirmative matter alleged in the answer to constitute a defense—they will be considered together.

[1] Under the contract between the plaintiff and the defendant, admitted by the demurrer and motion, the plaintiff was to convey the

Colorado land to the defendant. The defendant was to deliver to the plaintiff the bond of the Mexico Land Securities Company in which the Securities Company undertook and agreed to convey to the plaintiff the Mexican land described in the contract. The plaintiff conveyed the Colorado land to the defendant, and the defendant, on the 28th of October, 1913, delivered the bond of the Securities Company to the plaintiff.

Notwithstanding the argument of plaintiff's counsel to the contrary, we are clearly of the opinion that the defendant did all that was required of him by the contract when he delivered to the plaintiff the bond of the Securities Company. It is stipulated in the contract, as appears above, that in full discharge of his whole obligation the defendant would furnish the plaintiff the bond of the Securities Company, and that the delivery of the bond to the plaintiff should be a complete performance by the defendant of all obligation resting upon him under the contract, and it is expressly stated that thereafter the plaintiff should look to the Securities Company alone "according to the obligation of said Securities Company as expressed in its bond."

[2] It will be noted, by reading the corresponding paragraphs of the contract and bond above quoted, providing for the conveyance of the Mexican land to the plaintiff, that the word "warranty," appearing in the contract and describing the kind of deed which the plaintiff was to receive, is omitted from the bond. Counsel for plaintiff contends that because of this omission the demurrer to the answer and motion for judgment on the pleadings were both well taken; the argument being, as we understand it, that the stipulation to convey the land by warranty deed was such a vital part of the contract that the delivery of the bond alleged in the answer, which did not stipulate for a warranty deed, not only constituted no performance of the contract, but evidenced a breach of it, entitling the plaintiff to sue for the value of the land. If it be conceded that the plaintiff was entitled to a bond stipulating for a warranty deed, it must be admitted that he might waive the stipulation and accept a bond providing that he should be given a deed conveying to him good title to the land free and clear of all liens and incumbrances. Morrison v. Walker, 179 N. C. 587, 103 S. E. 139; Wells v. Hocking Valley Coal Co., 137 Iowa, 526, 114 N. W. 1076. And according to the allegations of the answer the bond actually delivered on the 28th of October, 1913, was "accepted by the said plaintiff under and in accordance with the said contract."

[3] The plaintiff insists that by reason of the lawless conditions admitted by the answer to exist in Mexico, and because of the admission that the Mexican government was inimical to foreigners and especially to citizens of the United States, it is apparent that it was impossible for either the defendant or the Securities Company to give him a good and indefeasible title to the Mexican land, and that therefore his motion for judgment on the pleadings should have been sustained. The answer to this contention is that the plaintiff has received for his Colorado land all that the defendant contracted to give him

—the, bond of the Securities Company—and he must now look to the Securities Company alone, as he stipulated in the contract he would do.

Other objections to the sufficiency of the answer of the defendant have been urged by counsel for the plaintiff, which we find to be without merit, requiring no special notice. The trial court did not err in overruling the demurrer of the plaintiff to defendant's answer, nor in denying plaintiff's motion for judgment on the pleadings.

[4] There remains, however, one other question for consideration After the jury had been impaneled, plaintiff's counsel made a brief opening statement of the case to the jury. Counsel for the defendant followed with an opening statement to the jury in behalf of the defendant. In his opening statement counsel for the defendant elaborated in considerable detail the matters alleged in the answer. At the conclusion of the opening statement to the jury by counsel for defendant, plaintiff's counsel renewed his attack upon the sufficiency of the affirmative defense of the defendant, by moving the court for a directed verdict in favor of the plaintiff on the opening statement of defendant's counsel. Upon the submission of the motion by counsel for plaintiff the court remarked:

"The motion for a directed verdict on the statement of facts by defendant's counsel is sustained; but the direction is that the verdict be returned in favor of the defendant"

—and immediately thereafter directed the jury to return a verdict for the defendant. To this ruling of the court counsel for plaintiff excepted.

[5] The practice is well settled that the trial court may direct a verdict against a party to the suit upon the opening statement made in his behalf to the jury. Oscanyan v. Arms Co., 103 U. S. 261, 26 L. Ed. 539; United States v. Dietrich (C. C.) 126 Fed. 676; Franklin v. Matoa Gold Min. Co., 158 Fed. 941, 86 C. C. A. 145, 16 L. R. A. (N. S.) 381, 14 Ann. Cas. 302; Spies v. Union Pacific R. Co., 250 Fed. 434, 162 C. C. A. 504; Smith v. Standard Sanitary Mfg. Co., 254 Fed. 427, 166 C. C. A. 59; Houk Mfg. Co. v. Cowen Co. (C. C. A.) 267 Fed. 787. This is so because, as said by the court in Oscanyan v. Arms Co., supra:

"The power of the court to act in. the disposition of a trial upon facts conceded by counsel is as plain as its power to act upon the evidence produced. The question in either case must be whether the facts upon which it is called to instruct the jury be clearly established. * * * In the trial of a cause the admissions of counsel, as to matters to be proved, are constantly received and acted upon. They may dispense with proof of facts for which witnesses would otherwise be called. They may limit the demand made or the set-off claimed. Indeed, any fact, bearing upon the issues involved, admitted by counsel, may be the ground of the court's procedure equally as if established by the clearest proof. And if in the progress of a trial, either by such admission or proof, a fact is developed which must necessarily put an end to the action, the court may, upon its own motion, or that of counsel, act upon it and close the case. * * * Of course, in all such proceedings nothing should be taken, without full consideration, against the party making the statement or admission. He should be allowed to explain and qualify it, so far as the truth will permit; but if, with such explanation and qualification, it should clearly appear that there could be no recovery, the court should not hesitate to so declare, and give such direction as will dispose of the action."

But by moving for a directed verdict on the opening statement of defendant's counsel the plaintiff did not admit, except for the purposes of the motion, the truth of the statement, and undoubtedly the court below fell into error in directing a verdict against the plaintiff upon the opening statement to the jury by defendant's counsel.

[6] This is an action at law, in which the plaintiff was entitled to a jury trial, a right which he did not waive by insisting upon his motion for judgment upon the opening statement of counsel for the defendant. Slocum v. New York Life Ins. Co., 228 U. S. 364, 33 Sup. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029.

The judgment is reversed, and the court·below directed to grant a new trial.