SAPPHIRE ROYALTY COMPANY et al.,
Appellants,

v.

H. A. DAVENPORT, Appellee.

No. 13070.

Court of Civil Appeals of Texas.

Houston.

Oct. 10, 1957.

Rehearing Denied Oct. 31, 1957.

Vinson, Elkins, Weems & Searls, Strong, Baker & Compton, and B. Jeff Crane, Jr., Houston, for appellants.

B. F. Louis and Murray G. Smyth, Houston, for appellee.

BELL, Chief Justice.

The appellee sued appellants, S. Russell Casey, S. R. Casey, Jr., and C. C. Osenbaugh, co-partners doing business as Sapphire Royalty Company, the partnership in its firm name, and H. S. Eddins, and other parties who have not appealed. The suit was to recover salary alleged to be due appellee for services rendered by him as "Production Superintendent" on an oil and gas lease owned by the defendants—(There were two leases but they seem to be treated as one insofar as material to this appeal, and we will therefore use the singular in this opinion). The suit also sought foreclosure of a lien given to secure the payment of such salary.

Upon trial before a jury the Court, on the jury's verdict, rendered judgment for appellee for $14,912, representing salary, plus interest thereon and $6,000 as an attorney's fee, and decreed foreclosure of a lien to the extent of $14,750 of the judgment. The judgment was based on what the jury found to be the usual salary paid a production superintendent and not on quantum meruit.

These are the facts that gave rise to the controversy:

On January 12, 1952, O. K. Winfree, Jr., and appellee, H. A. Davenport, were the owners, as lessees, of an oil and gas lease on two tracts of land in Chambers County. On that date the lessees assigned their interest to Ernest Adams and entered into an operating agreement with Adams. The terms of the assignment and the operating agreement are not material to any question we are called upon to decide, except in one particular. The portion of the assignment material to this appeal reads as follows:

"The consideration for this assignment is as follows:

*   *   *   *   *   *

"(b) As a further part of the consideration for this Assignment, it is agreed that upon production of oil and/or gas being obtained from said leases, or either of them, that the said H. A. Davenport shall thereupon be, and he is here now engaged as superintendent of production, with the usual duties as such, upon said land, and his salary shall be fixed in such and in like amount as is being paid for like services in the area in which said leases are located, and which employment shall be for such period of time as said leases shall be operated and held by the Assignee hereunder, or those holding by, through or under him."

The other parties defendant were assignees from Ernest Adams. The first producing well was brought in on the lease in November, 1952, and appellee commenced performance of his duties as a production superintendent. He continued performance through February 13, 1956, and the judgment encompasses salary over this period of time. The case was submitted to the jury on the last mentioned date and the verdict was returned February 14, 1956.

Appellants assign two Points of Error. The first sets up that the agreement which is the basis of the suit was not performable within one year from the date of the making thereof and is unenforceable because in violation of the Statute of Frauds, Article 3995, Subdivision 5, Revised Civil Statutes 1925. While paragraph (b) above quoted is in writing and signed by Ernest Adams, appellants contend it does not satisfy the statute because what the duties of a production superintendent were, and what such an employee was normally paid, are

not set out in the agreement, but are left entirely to proof by parol testimony. The second point sets up that there was no evidence upon which the jury could have found an attorney's fee against these appellants because the evidence introduced was based on the hypothesis that appellee's counsel was to be compensated for all work done in connection with all of the defendants, while the Special Issue relates only to the work done in connection with the suit as against the appellants.

Appellee, in reply, makes the following contentions:

1. The agreement does not offend the statute because by its terms there is nothing that shows it not to be performable within one year, but so far as the terms of the agreement are concerned it is susceptible of performance within one year.

2. If he be mistaken in the above, appellee says that paragraph (b) above quoted is a memorandum which satisfies the statute.

3. Further, if there be no sufficient memorandum since appellee has performed, and appellants allowed him to perform, they are estopped to rely upon the statute.

4. Since there has been performance by appellee, there is nothing left for appellants to do but to pay as provided in the agreement.

5. Suit was in the alternative on quantum meruit and the jury answered the reasonable value of appellee's services was substantially the same as what a production superintendent usually received and that recovery is allowable on this theory though the contract be not enforceable.

We have reached the conclusion that the contract sued upon is not within the Statute of Frauds because there is nothing in its terms showing that it is not to be performed within one year, but to the contrary, according to its terms, it may be fully performed within a year, because the contin-

gency stated by the contract itself may well happen at any time.

Article 3995, Subdivision 5, reads as follows:

"No action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized:

\* \* \* \* \* \*

"5. Upon any agreement which is not to be performed within the space of one year from the making thereof. Acts 1840, p. 28; P.D. 3875; G.L. vol. 2, p. 202."

In discussing this section of the statute, which is the same in practically every jurisdiction, Professor Corbin, in his work on Contracts, has this to say:

"In its actual application, however, the courts have been perhaps even less friendly to this provision than to the other provisions of the statute. They have observed the exact words of this provision and have interpreted them literally and very narrowly. The words are 'agreement that is not to be performed.' They are not 'agreement that is not in fact performed' or 'agreement that may not be performed' or 'agreement that is not at all likely to be performed.' To fall within the words of the provision, therefore, the agreement must be one of which it can truly be said at the very moment it is made, 'This agreement is not to be performed within one year.' "

Our Supreme Court, in Chevalier v. Lane's, Inc., 147 Tex. 106, 213 S.W.2d 530, 532, 6 A.L.R.2d 1045, after reviewing various Texas cases, particularly conflicts in them, restated the rule thus:

"We accordingly restate the rule so that where, by the terms of the oral

agreement, its period is to extend beyond a year from the date of its making, the mere possibility of its termination by operation of law within the year, because of death or other fortuitous event, does not render paragraph 5 of the Statute inapplicable, but that, on the other hand, where the agreement may, by its own terms, be fully performed within the year * * the Statute does not apply."

■ That case was one where there was a contract of employment for one year, the year to commence at a time subsequent to the making of the agreement. In application of the rule the court held the statute to be applicable because, as we interpret the case, there was nothing in the agreement which gave evidence of any thought by the parties that death was a contingency which would terminate the contract. If the contract had been for the life of a party to it, then it would have been without the statute, because the parties by the agreement contemplate a contingency which might occur within a year. Wright v. Donaubauer, 137 Tex. 473, 154 S.W.2d 637 (Tex.Sup.). Too, by the terms of the agreement, "its period was not extended beyond a year." The agreement in the case before us stated the employment "shall be for such period of time as said leases shall be operated and held by the assignee hereunder, or those holding by, through or under him." Here the agreement specifies no period beyond a year. The operation of the lease might cease at any time by a voluntary surrender by assignee, or, it might terminate by failure of production.

■ Appellants argue that since under an oil and gas lease production may continue forever, a fee is created and this shows the parties contemplate performance beyond a year. They cite Texas Co. v. Daugherty, 107 Tex. 226, 176 S.W. 717, L.R.A.1917F, 989. However, the fee created is a base or determinable one, because production may cease at any time, even within a year, in which case the lessee's interest

is at an end in the absence of some special provisions in the lease. Texas Co. v. Daugherty, supra; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A.L.R. 566.

■ The fact that it is improbable that performance will occur within a year, or, that the parties think it will continue beyond a year, matters not if the agreement itself does not provide a period extending beyond the year. And the fact that it does, as here, continue more than a year does not offend the statute. 49 Amer.Jur., § 28, p. 389; Warner v. Texas & P. R. Co., 164 U.S. 418, 17 S.Ct. 147, 41 L.Ed. 495; 20–A Tex.Jur., § 44, pp. 322–323; Lennard v. Texarkana Lumber Co., 46 Tex.Civ.App. 402, 94 S.W. 383; Rainwater v. McGrew, Tex.Civ.App., 181 S.W.2d 103, writ ref. w. m.

Appellants' first point is overruled.

In the light of the above conclusion, it becomes unnecessary to discuss appellee's other theories advanced in support of the trial court's judgment.

By their second point appellants complain there was no evidence upon which the jury could have found an attorney's fee for which appellants were obligated. The basis of this contention is that the evidence introduced related to all of the work done by appellee's attorneys in the case and much of such work pertained not to appellants but to other parties in the case. The testimony of appellee's expert witnesses as to the reasonable value of a fee for such work was based on all of the work done and not merely on that done by the attorney in connection with the cause of action asserted against appellants.

This point is also overruled.

■■ The suit was against parties who held an interest in the lease being operated, and in addition to a monetary judgment it sought foreclosure of a lien. Therefore, all of the parties were necessary. We have been unable to find from the record where

there was any substantial question presented by the presence of any other party that was not involved by virtue of the suit against appellants alone. We feel that the record reflects that all work done by the appellee's attorney was necessary to effectively dispose of his cause of action against appellants and appellee would be entitled to recover from appellants for all of the work done by his attorney. Actually, it was wholly unnecessary to obtain the testimony of attorneys giving their opinion as to what the attorney's services under the facts were worth. The jury had heard the pleadings read; it had heard all of the testimony; and it knew of the legal questions involved. Without more than this, there was evidence to call for the issue as to attorney's fee. J. H. Hubbard & Son, Inc., v. Greer, Tex. Civ.App., 255 S.W.2d 389; Gulf Paving Co. v. Lofstedt, Tex.Com.App., 144 Tex. 17, 188 S.W.2d 155.

The judgment of the trial court is affirmed, Justice WERLEIN not sitting.