**UNIVERSITY COMPUTING COMPANY, Plaintiff,**

v.

**The LEADER CORPORATION, Defendant.**

**Civ. A. No. CA-3-7397-D.**

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 17, 1974.

Benjamin A. Mazow, Woodrow M. Bonesio, John L. Hauer, Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex., for plaintiff.

John D. Crawford, Harriet Miers, Dallas, Tex., for defendant.

MEMORANDUM OPINION
ORDER

ROBERT M. HILL, District Judge.

In this diversity action, University Computing Company (hereinafter "UCC") seeks to terminate a master contract and settlement agreement

contract[1] with the defendant, The Leader Corporation (hereinafter "Leader"). In the first count of UCC's complaint it is alleged that the contracts are ambiguous because they grant a license to Leader "for an indefinite period of time." UCC has filed a motion for summary judgment urging that this court declare the license terminated since as "a matter of law, a license 'for an indefinite period of time' is one which either the licensor or the licensee may terminate at will, for any reason whatsoever or for no reason at all." Leader has also filed a motion for summary judgment urging that the contracts have not been terminated nor are terminable at will. The court has considered the motions and the briefs and is of the opinion that the motion for summary judgment filed by UCC should be overruled and that the motion for summary judgment filed by Leader should be sustained.

## I. The Facts

Leader had entered into a master contract with Results, Inc., who had developed a unique set of fully-integrated computer software systems to perform the accounting functions of banks. By this master contract, Leader had acquired the non-exclusive right to use the Results computer software systems. UCC, a competitor of Leader, later acquired the assets of Results, Inc., and one of the assets was the master contract with Leader. Subsequently, UCC repudiated the master contract and Leader then filed suit in federal court to specifically enforce the master contract in order that it could pursue its facilities management activities for banks and other financial institutions. Leader sought and was granted an expedited trial setting for October 23, 1972. However on October 21, 1972, the suit was settled pursuant to a settlement agreement contract which recognized the master contract as a binding contract between Leader and UCC except as modified by the terms of the settlement agreement. Prior to the signing of the settlement agreement contract, the parties interlined in three separate places that Leader could use the Results' software systems "for an indefinite period of time."

On July 3, 1973, Leader ordered the Results software systems pursuant to the terms of the master contract and the settlement agreement contracts with UCC. On July 10, 1973, UCC informed Leader that it was terminating both of these contracts. UCC then filed the instant suit alleging that the contracts with Leader should be terminated as a result of Leader's breach of its fiduciary obligation not to disclose UCC's trade secrets. UCC then filed an amended complaint, one count of which embodied the terminable at will contention which is the subject of the present motions for summary judgment.

## II. Performance for Definite Duration

UCC urges that since the settlement contract provides that Leader may use the Results' system for an indefinite period of time, the contracts in question are thus terminable at will. A plethora of cases has been cited by UCC for the proposition that a contract indefinite as to the time of its performance may be terminated by either party by giving notice of its intention to do so.[2] The *ratio decidendi* of these authorities is that if a contract is indefinite as to the time of performance then it is impossible to fix the liabilities of the parties to that agreement. Moore v. Dilworth, 142 Tex. 538, 179 S.W.2d 940 (1944). Additionally, the courts are reluctant to enforce an obligation to perform for an indefinite period of time. In Ingram Freezers v. Atchison, T. & S. F. Ry. Co., 464 S.W.2d 915 (Tex.Civ.App.—Dallas 1971, writ ref'd n.r.e.) the court refused to enforce a contract where the defend-

1. The settlement agreement contract arose from the disposition of a prior lawsuit between Leader and UCC over the master contract.

2. *But cf.* Sapphire Royalty Co. v. Davenport, 306 S.W.2d 202 (Tex.Civ.App.—Houston 1957, writ ref'd n. r. e.) ; Smith v. Lane, 236 S.W.2d 214 (Tex.Civ.App.—San Antonio 1950, no writ) ; Foster v. Wright, 217 S.W. 1090 (Tex.Civ.App.—Fort Worth 1919, no writ).

ant was to furnish rail service for as long as the plaintiff desired. The court in Allied Financing Co. v. Fowler, 358 S.W.2d 239 (Tex.Civ.App.—Austin 1962, no writ) refused to enforce a contract in which the defendant had agreed to finance the plaintiff's business for an indefinite period of time. In Shaunty v. Burrus Mills, Inc., 349 S.W.2d 789 (Tex.Civ.App.—Fort Worth 1961, no writ) the court held that a contract to furnish feed products to the plaintiff for "as long as it was a good business arrangement," was unenforceable and was terminable at the will of either of the parties. The significance of these authorities cited by UCC is that a party seeking termination had an affirmative obligation to perform a *substantial* portion of the contract for an indefinite period of time. It is this distinction that makes UCC's cases inapplicable to the facts of this suit.

■ The basic requirements of the agreements between Leader and UCC are that Leader must pay $445,000 over a period of five years for the use of the Results' system, Leader must also pay certain percentages of its annual gross revenue from the use of the Results systems for a period of eight years, and UCC is obligated to deliver the Results systems to Leader and provide on-site services of a service representative for a total of five full days. Leader is also entitled to additions and improvements to the Results systems without charge for a period of 12 months after a specific system is ordered from UCC.[3] After completing these obligations which are governed by definite periods of time, Leader's performance under the agree-

ment are basically complete.[4] Under these circumstances this court is of the opinion that the agreement between Leader and UCC are definite enough in duration for a court to fix the contractual liabilities of the parties. Leader's *non-exclusive* right to the use of the Results' systems does not impose any obligations on UCC for an indefinite period of time. A contract is sufficiently definite and certain if it leaves no reasonable doubt as to the specific conduct a party is obligated to perform. Palmer v. Katz, 210 S.W.2d 451 (Tex.Civ.App.—Eastland 1948).

■ Further, considering the contract as a whole and giving effect to its general purpose and the true intentions of the parties, it is clear that UCC and Leader did not intend to create an agreement terminable at the will of either party. The original lawsuit was settled two days before the trial date; Leader has marketed its services incidental to the Results system to various financial institutions; and, $109,681.00 has already been received and accepted by UCC from Leader. Further Leader clearly cannot be restored to the position it occupied before the execution of the settlement agreement. Under these circumstances, UCC cannot now escape the obligations of the contract by simply returning the partial consideration paid by Leader. Kennedy v. McMullen, 39 S.W. 2d 168 (Tex.Civ.App.—Beaumont, 1931, writ ref'd).

For the foregoing reasons, this court is of the opinion that UCC may not terminate these contracts because of Leader's non-exclusive right to use the Results system "for an indefinite period of

---

3. UCC must also make available all modifications of the Results system which are developed after this 12 month period. However this obligation is subject to the execution of a "mutually satisfactory separate agreement" between the parties.

4. UCC is also obligated to provide certain consulting services if requested by Leader. The court construes this provision to require UCC to provide these consulting services for a reasonable time after a system is ordered

by Leader. Smith v. Lane, 236 S.W.2d 214 (Tex.Civ.App.—San Antonio 1950, no writ). Additionally, this court is of the opinion that the absence of a fixed period of time governing UCC's obligation to provide consulting services does not render the *entire* contract unenforcible. This provision is not a "material element" of the contract which would permit UCC to escape from its obligations under other provisions of the agreement. Scott v. Eastline & R.R.R.Co., 72 Tex. 70, 10 S.W. 99, 102 (1888).

time." There is nothing in the language of these contracts nor has there been any showing that the parties intended to limit the duration of Leader's use of the system. UCC's and Leader's obligations pursuant to the contracts are of a definite duration and they may not be terminated at the will of either party.

While Leader has taken the lead in its efforts to enforce its contract with UCC, there remains some universal computations to accompany the results of the motions for summary judgment. UCC's allegation that Leader has breached and violated its obligations under the settlement agreement contract and the master contract is an issue which can be only resolved by a trial on the merits. The determinations made in this opinion and order are without prejudice to the resolution to the remaining contested issues.

It is therefore ordered that:

(1) The motion for summary judgment filed by UCC is overruled;

(2) the motion for summary judgment filed by Leader is sustained;

(3) the unresolved issues in this case are set for trial on Monday, April 29, 1974.