ACCEPTED
14-15-00291-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
8/19/2015 4:40:06 PM
CHRISTOPHER PRINE
CLERK

## CAUSE NUMBER: 14-15-00291-CV

### IN THE

### COURT OF APPEALS FOR THE FOURTEENTH DISTRICT

### at HOUSTON

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
8/19/2015 4:40:06 PM
CHRISTOPHER A. PRINE
Clerk

_____

### ERIC E. PEREZ and EDMUNDO PEREZ,
Appellants,

v.

### LE PRIVE ENTERPRISES, L.L.C. d/b/a and
### MEKANO LIVE & GRILL, and MANUEL ARELLANO,
Appellees.

_____

On Appeal from 127TH Judicial District Court
Harris County, Texas
Trial Court Cause No. 2013-74140

_____

### Brief of Appellant

_____

James Nathan Overstreet
State Bar No. 00784706
**J. Nathan Overstreet & Assoc., P.C.**
8711 Highway 6 North, Suite #230
Houston, Texas 77095-2477
(281) 855-1000
Fax (281) 855-4580
overstreetlawfirm@gmail.com

### ATTORNEYS FOR APPELLANTS
### ERIC E. PEREZ, and EDMUNDO PEREZ

**CAUSE NUMBER: 14-15-00291-CV**

**ERIC E. PEREZ and EDMUNDO PEREZ,**
Appellants,

v.

**LE PRIVE ENTERPRISES, L.L.C. d/b/a and
MEKANO LIVE & GRILL, and MANUEL ARELLANO,**
Appellees.

_____

**IDENTITY OF PARTIES AND COUNSEL**

_____

  The following is a complete list of all parties to the trial court's appealable order, as well as the names and addresses of all trial and appellee counsel.

| <u>PARTIES</u> | <u>COUNSEL</u> |
|---|---|
| Defendants/Appellants | |
| **ERIC E. PEREZ, and EDMUNDO PEREZ** | James Nathan Overstreet<br>State Bar No. 00784706<br>**J. Nathan Overstreet & Assoc., P.C.**<br>8711 Highway 6 North, Suite #230<br>Houston, Texas 77095<br>(281) 855-1000<br>Fax (281) 855-4580 |

| **PARTIES** | **COUNSEL** |
|---|---|

Plaintiffs/Appellees

| **LE PRIVE ENTERPRISES, LLC** | Daniel W. Jackson |
|---|---|
| **D/B/A MEKANO LIVE & GRILL** | Scott K. Vastine |
| **MANUEL ARELLANO** | Jennifer H. Frank |
| | **The Jackson Law Firm** |
| | 3900 Essex Lane, Suite #1116 |
| | Houston, Texas 77017 |
| | (713) 522-4435 |
| | Fax (713) 527-8850 |
| | daniel@jacksonlaw-tx.com |

Trial Court

| **Hon. Judge R.K. Sandill** | Presiding Judge |
|---|---|
| Harris County Civil Courthouse | 127th Civil District Court |
| 201 Caroline, 10th Floor | |
| Houston, Texas 77002 | |
| (713) 368-6161 | |

**TABLE OF CONTENTS**

IDENTITY OF PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

ISSUED PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

Issue 1:     Did the trial court err in finding that Eric and Emundo Perez have no ownership interest in Le Prive Enterprises, L.L.C.?

Issue 2:     Did the trial court err in limiting the award for Eric Perez against Le Prive Enterprises, L.L.C. to $2,510.00 when the evidence showed that Eric Perez invested at least $163,55.26 into the business and failing to award any recovery to Edmundo Perez where the evidence showed that he invested time, effort and $66,754.84 into the business?

Issue 3:     Did the trial court err in awarding a judgment against Eric E. Perez and Edmundo Perez in favor of Le Prive Enterprises, LLC in the amount of $16,500.00 for conversion?

STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.     The trial court erred by determining that the Perez brothers did not have any ownership interest in Le Prive Enterprises, LLC. . . . . . . . . . . . . 10

    A.     The totality of the circumstances point to the existence of a partnership.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    B.     The certificate of formation does not preclude finding of Perez' ownership, because it does not need not identify all members. . . . . 12

iv

C.  The Texas Business Organizations Code provides for oral operating agreements by limited liability company amongst members. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

D.  The Partnership Dissolution Agreement satisfies any writing requirement, if one exists. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

E.  Indefinite duration of partnership means that agreement falls outside of ambit of Statute of Frauds. . . . . . . . . . . . . . . . . . . . . . 16

F.  Partial performance insulates partnership agreement from Statute of Frauds. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

II.  The trial court erred in limiting the award for Eric Perez against Le Prive Enterprises, L.L.C. to $2,510.00 when the evidence showed that Eric Perez invested at least $163,55.26 into the business and failing to award any recovery to Edmundo Perez where the evidence showed that he invested time, effort and $66,754.84 into the business.. . . . . . . . . . . . . . . . . . . . 19

III.  The trial court erred in awarding a judgment in favor of the Perez brothers in the amount of $16,000.00 for conversion. . . . . . . . . . . . . . . . . . . . . 20

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# INDEX OF AUTHORITIES

*Bratcher v. Dozier*,
162 Tex. 319, 346 S.W.2d 795 (1961) 17.. . . . . . . . . . . . . . . . . . . . . . . . 18

*Coastal Plains Dev. Corp. v. Micrea, Inc.*,
572 S.W.2d 285, 287 (Tex.1978). . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

*Davis v. City of San Antonio*,
752 S.W.2d 518, 522 (Tex. 1988).. . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Dolenz v. Nat'l Bank of Tex. at Fort Worth*,
649 S.W.2d 368, 370 (Tex. App.-Fort Worth 1983, writ ref'd n.r.e.). . . . . 21

*Donald v. Phillips*, 13 S.W.2d 74, 76 (Tex.1929).. . . . . . . . . . . . . . . . . . . 10

*Eisenbeck v. Buttgen*, 450 S.W.2d 696
(Tex.Civ. App.—Dallas 1970, no writ). . . . . . . . . . . . . . . . . . . . . . 17

*First Nat. Bank of Missouri City v. Gittelman*,
788 S.W.2d 165, 169
(Tex. App.--Houston [14th Dist.] 1990, *writ denied*).. . . . . . . . . . . . . . 21

*Friedlander v. Hillcoat*,
14 S.W. 786, 787 (Tex.1890). . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hall v. Hall*,
158 Tex. 95, 308 S.W.2d 12 (1957). . . . . . . . . . . . . . . . . . . . . . . . 17

*Hooks v. Bridgewater*,
111 Tex. 122, 229 S.W. 1114, 1116 (1921). . . . . . . . . . . . . . . . . . . . 17

*Imperial Sugar Co. v. Torrans*,
604 S.W.2d 73, 74 (Tex. 1980).. . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Ingram vs. Deere*,
288 S.W. 3d 886 (Tex. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lone Star Beer, Inc. v. Republic Nat'l Bank of Dallas*,
     508 S.W.2d 686, 687 (Tex. Civ. App.-Dallas 1974, no writ)............ 20

*Morey v. Page*,
     802 S.W.2d 779, 786 (Tex. App.-Dallas 1990, no writ). .............. 20

*Sapphire Royalty Company v. Davenport*,
     306 S.W.2d 202 (Tex.Civ.App.—Houston 1957, writ ref'd n.r.e.). ... 16,17

*Southwind Aviation, Inc. v. Avendano*,
     776 S.W.2d 734, 737 (Tex. App.--Corpus Christi 1989, writ denied)..... 21

*Southern States Transp., Inc. v. State*,
     774 S.W.2d 639, 640 (Tex. 1989)................................. 19

*Stafford v. Stafford*,
     726 S.W.2d 14, 16 (Tex. 1987)................................... 19

*Taiwan Shrimp Farm Village Ass'n, Inc. v. U.S.A. Shrimp Farm*
     *Development, Inc.*,
     915 S.W.2d 61, 71 (Tex. App.--Corpus Christi 1996, writ denied)....... 22

*Terrazas v. Sullivan*,
     470 S.W.2d 904 (Tex.Civ.App.—El Paso 1971, writ ref'd n.r.e.). ....... 17

*United Mobile Networks, L.P. v. Deaton*,
     939 S.W.2d 146, 147-48 (Tex. 1997)............................. 21

*Welch v. Coca-Cola Enterprises., Inc.*,
     36 S.W.3d 532, 539 (Tex.App.Tyler 2000, no pet.).................... 18

*Winkle Chevy-Olds-Pontiac, Inc. v. Condon*,
     830 S.W.2d 740, 746 (Tex. App.--Corpus Christi 1992, *writ dism'd*)..... 21

# TEXAS STATUTES

Tex. Bus. & Com. Code Ann.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Tex. Bus. Orgs. Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15

# STATEMENT OF THE CASE

Nature of the Case:        Manuel Arellano entered into a partnership agreement with his cousins, Eric and Edmundo Perez, to own and operate a nightclub, Mekano Live & Grill. The agreement contemplated that Manuel and Eric would make capital contributions and that Edmundo Perez would manage the club. The ownership percentages testified to by Eric and Edmundo and also recited in the Partnership Dissolution Agreement were as follows: (Manuel Arellano - 35%, Eric Perez - 35% and Edmundo Perez - 35%). RR vol. 6 at 75, Def.'s Ex. 10.

Prior to opening the nightclub, Manuel Arellano formed the Le Prive Enterprises, L.L.C. and named himself as the sole member in the formation documents. Manuel Arellano signed as guarantor of the lease for the club. RR vol. 6 at 47-59, Π's Ex. 1 & 2.

The club opened with Edmundo acting as manager. At trial, Manuel denied that Perez had any ownership rights and feigned ignorance of any of the Perez' investments in the club. Eric invested $163,000.00+ into the club, and Edmundo also had to pay in excess of $66,000.00 out of pocket to cover expenses because Manuel refused to make any additional contributions.

Manuel Arellano unilaterally removed Edmundo Perez as manager and locked the Perez brothers out. In response, Eric and Edmundo Perez removed some of the personalty out of the club.

Manuel Arellano brought suit on a conversion claim and under the Texas Theft Liability Act and set the matter for a temporary injunction hearing. The Court ordered that the Perez brothers return the clubs' personalty, and the Perez brothers complied.

Eric and Edmundo filed a counterclaim seeking declaration that they had an ownership interest in the limited liability company and for damages related to Manuel's breach of the agreement and fraud.

Trial court disposition:    The trial court granted judgment against Eric and Edmundo Perez, jointly and severally, for $16,500.00 in favor of Le Prive Enterprises, L.L.C. The found that

Manuel Arellano was the sole owner of the company. The Court granted a judgment in favor of Eric Perez in the amount of $2,510.00 against the company. The court awarded the Perez brothers $9,500.00 for attorney's fees. The trial court declined to award any damages to the Perez brothers against Manuel Arellano individually. CR vol. 2 at 539.

Trial Court: District Court, 127th Judicial District Court, Harris County, Texas, R.K. Sandill, Cause Number: 2013-74140

Parties on Appeal: *Appellants:* Eric Perez and Edmundo Perez

*Appellees:* Le Prive Enterprises, L.L.C. d/b/a Mekano Live & Grill, and Manuel Arellano

# ISSUES PRESENTED

## Issue Number One

Did the trial court err in finding that Eric and Emundo Perez have no ownership interest in Le Prive Enterprises, L.L.C.?

## Issue Number Two

Did the trial court err in limiting the award for Eric Perez against Le Prive Enterprises, L.L.C. to $2,510.00 when the evidence showed that Eric Perez invested at least $163,55.26 into the business and failing to award any recovery to Edmundo Perez where the evidence showed that he invested time, effort and $66,754.84 into the business?

## Issue Number Three

Did the trial court err in awarding a judgment against Eric E. Perez and Edmundo Perez in favor of Le Prive Enterprises, LLC in the amount of $16,500.00?

## STATEMENT OF FACTS

**Factual Background**

Eric Perez and Edmundo Perez are brothers and first cousins to Manuel Arellano. RR vol. 5 at 38. Manuel was a truck driver who lived in Dallas, Eric owned a car dealership for twelve years, and Edmundo had worked promoting and managing latino night clubs. RR vol. 5 at 131, RR vol. 5 at 38, RR vol. 5 at 130-132. The Perez brothers lived in Houston. RR vol. 4 at 40-42.

The three cousins formed a partnership agreement in which they agreed to open a nightclub together. There was consensus among the parties in their trial testimony that Eric, Edmundo and Manuel agreed to open a nightclub at a meeting which took place at an IHOP in Houston. All of them recalled that Manuel agreed to contribute 70 percent of the capital, Eric agreed to front 30 percent of the needed investment, and Edmundo agreed to actively manage the club at that meeting. Compare RR vol. 5 at 39 with RR vol. 4 at 39, RR vol. 4 at 153-157, and RR vol. 5 at 129-131, 136.

At that time, the parties agreed that Manuel would put up 70% of the initial capital and that Eric would be responsible for the remaining 30% of the needed capital. The parties contemplated and agreed that Edmundo would actively manage the club and bring his expertise as a person who had past experience

1

managing and working in clubs. The same pro rata allocation would also applied with respect to the debts of the club; that is, Manuel would be held responsible for 70% and Eric would take on 30% of the expenses until such time as the club turned profitable. RR vol. 4 at 154-155.

While there was unanimity with respect to the fact that the three cousins reached an agreement whereby the three would join hands to own and operate a business, Manuel Arellano testified that the deal was off right after in came to putting pen to paper on the lease. RR vol. 5 at 39. According to him, the deal busted because the Perez had neither the capital nor the credit to consummate the deal. *Id.*

Manuel Arellano could not keep his story straight between his answers to interrogatories, deposition and trial testimony. RR vol. 5 at 68 (deposition testimony refused to answer question of whether Perez brothers had an ownership interest in the club), RR vol. 5 at 39 (Edmundo would have 20 to 26 percent ownership), RR vol. 5 at 69-71 (Eric had an obligation to front 30 percent of the expenses and Eric had no such obligation). Manuel Arellano's strangest version of the alleged partnership agreement was that he would front all of the money, that Edmundo Perez would operate the club and Eric Perez would supervise in

2

exchange for 20 percent. Under this scenario, it is unclear what Edmundo Perez would get for his efforts. The testimony was so garbled it is actually unclear who would get what according to Manuel Arellano. RR vol. 5 at 72-74.

After equivocating, Manuel Arellano's final answer was that Eric Perez and Edmundo Perez had no obligation to invest any money into the business. RR vol. 5 at 71.

Manuel Arellano suggested that Edmundo Perez and Eric Perez might some day obtain ownership in the club in six or seven months time after it turned profitable. RR vol. 5 at 39-40.

Edmundo and Eric Perez retained Veronica Martinez, a licensed real estate broker, to negotiate the terms of a lease for the space which they found located at 9344 Richmond Avenue, Houston, Texas 77063. Veronica Martinez understood that she represented a tripartite partnership even though she never spoke directly with Manuel. RR vol. 4 at 94-97, 106. Veronica Martinez confirmed that leased premises was meant to be used for a nightclub, owned and operated by Edmundo, Eric and Manuel. RR vol. 4 at 95-96. The down payment was tendered by Edmundo Perez. RR vol. 4 at 99. Shortly before the lease contract was finalized, Edmundo Perez directed to have Veronica Martinez list Manuel Arellano as the guarantor. RR vol. 4 at 97.

3

To protect the business, the partners agreed to form a limited liability company prior to the date of the execution of the lease. RR vol. 4 at 46. This was accomplished by the filing of formation documents with the Secretary of State in March of 2012, which was filed by Eric Perez. RR vol. 6 at 1-3, Π's Ex. 1, RR vol. 4 at 157. The articles identify Manuel Arellano as its sole member. Id. The cousins conducted business without a written operating agreement because of mutual trust, stemming from their family relationship. RR vol. 4 at 157.

Guillermo Altamirano held the liquor license perhaps of Eric Perez's status in the United States. RR vol. 4 at 50. Later, the articles were amended to reflect that Guillermo Altamirano as the sole managing member and deleting Manuel Arellano as a member. RR vol. 5 at 44, RR vol. 6 at 59-61, Π's Ex. 6.

Manuel Arellano signed the lease because he had a better credit score. RR vol. 4 at 59. The electric, Comast and security system contracts were likewise put in Manuel Arellano's name. RR vol. 4 at 61-62.

A company bank account was opened at Wells Fargo with Manuel Arellano and Eric Perez as signatories. RR vol. 4 at 63.

Neither Eric Perez nor Edmundo Perez took any money from the business. RR vol. 4 at 62.

Eric Perez invested in excess of $160,000.00 into the business. RR vol. 4 at 158. Eric Perez kept many of the receipts, but many of them were taken by Manuel Arellano after the lockout. RR vol. 4 at 158-160, RR vol. 5 at 150. Eric Perez offered $55,000.00 in receipts which were admitted by the Court. RR vol. 6 at 180-183, RR vol. 6, 438-545. Eric Perez showed the court an additional $106,000.00 worth of expenditures in trial exhibit 9. RR vol. 6 at 546-556.

Eric Perez paid out of pocket for lights at the club, booths, performers, carpeting, labor, kitchen, fryers, televisions, vent hood, signs, and employees. RR. vol 4. at 185-199. Eric Perez paid a disproportionate share of the expenses because Manuel Arellano failed to live up his obligation to pay seventy percent. RR. vol. 4 at 197-198, RR vol. 5 at 132-133, 136. When confronted by Eric Perez about failing to cover the expenses, Manuel Arellano never denied his obligation; instead, he simply offered excuses. RR vol. 4 at 188, RR vol. 5 at 136. In fact, Manuel Arellano suggested to Eric Perez a number of times that the two of them should go it alone and kick Edmundo Perez out of the business. RR vol. 4 at 197-198, 201-202. These payments were not made as gifts but, instead, in reliance on the promises made by Manuel Arellano. RR. vol. 4 at 203.

Even though, under any version of the partnership agreement, Edmundo Perez had no obligation to invest any capital, Edmundo Perez was compelled to advance in excess of $55,000.00 out of his pocket to keep the enterprise going. Manuel Arellano called the CBS salesman, Ricardo Mena, who was in charge of the Mekano Live radio advertising spots. Ricardo Mena confirmed that picked up payments weekly and that $51,000.00 cleared the bank from Eric Perez's personal bank account. RR vol. 4 at 84-87, RR vol. 6 at 412-425, RR vol. 4 at 205, RR vol. 5 at 137.

Even though the business was not yet turning a profit, it was on an upward trajectory and enjoyed an excellent reputation. RR vol. 4 at 209-210. This is not unusual in that it typically takes a year before a business like this turns a corner and becomes profitable. RR vol. 5 at 143-145.

Without notice or permission, Manuel Arellano changed the locks on the club Thanksgiving week in 2013. RR vol. 4 at 206, RR vol. 5 at 146-147. This lockout was a breach of the partnership agreement. Id. Manuel Arellano simply called and indicated to Eric Perez that he and his brother were out of the club and that the locks were changed. RR vol. 4 at 209-210. Manuel Arellano explained that he had the right to take this step because his name was on the lease. RR vol. 4 at 211.

Not surprisingly, Eric Perez and Edmundo Perez were upset with Manuel Arellano changing the locks since they had invested over $200,000.00 into the business and paid for many of the personalty. The Perez brothers went back into the leased space to remove some of their belongings (sofas, lighting, lighting equipment, and tables) on Saturday after Thanksgiving, but they returned it all in accordance with the trial court's temporary injunction order on December 20, 2013. RR vol. 4 at 211-215, RR vol. 5 at 149-150, RR vol. 5 at 153.

Prior to filing suit, Manuel Arellano called the police, alleging that the Perez brothers stole the property. RR. vol. 4 at 211. Cynthia Rayfield acted as their attorney who spoke on their behalf to law enforcement. Ms. Rayfield, Esquire provided documentation reflecting that the Perez brothers paid for the items, and the district attorney declined to accept charges. RR vol. 5 at 116, RR vol. 5 at 150.

Manuel Arellano testified that the Perez brothers took furniture out for approximately three weeks. RR vol. 5 at 61. Manuel Arellano testified that the loss of furniture caused the club to lose business, rent furniture, and open one night of the week. RR vol. 5 at 57. Manuel Arellano speculated that the Perez brothers took the generator for the light because of a text from Eric and the fact that the generator was gone the day after the furniture was returned. RR vol. 5 at 63-64. Manuel Arellano indicated that he did not know the costs of renting but testified

7

that he spent $1,300.00 to get the lights going. RR vol. 5 at 64. Guillermo Altamirano, the corporate representative for Le Prive Enterprise, LLC, could not confirm whether the furniture belonged to the company or the Perez brothers. RR vol. 5 at 119-120.

Guillermo Altamirano testified that there was liquor missing, valued at between 5 to 10 thousand dollars. RR vol. 105. This testimony could not survive cross examination because he could not explain the fact that the club only spent $2,650.00 in liquor from the lockout until the temporary injunction hearing. RR vol. 5 at 124.

Contrary to the allegations made, the Perez brothers did not take the generator or the alcohol. RR vol. 5 at 158.

Cynthia Rayfield drafted a Partnership Dissolution Agreement. RR vol. 5 at 151, RR vol. 4 at 110. The Partnership Dissolution Agreement correctly spelled out the relative ownership of Le Prive Enterprises, LLC. RR vol. 5 at 151.

Manuel Arellano acknowledged signing the Partnership Dissolution Agreement (Def.'s Ex. 10) which spelled out the relative ownership of the parties as follows:

> "This document is an agreement between partners Manuel Arellano, Eric E. Perez, and Edmundo Perez (said partnership is incorporated as Le Prive Enterprises, L.L.C. and is doing business as Mekano Live). Manuel Arellano owns 35% of Le Prive Enterprises, LLC doing business as Mekano

8

Live, Eric Perez owns 35% of Le Prive Enterprises, LLC doing business as Mekano Live, Edmundo Perez owns 30% of Le Prive Enterprises, LLC doing business as Mekano Live."

RR vol. 5 at 74-75, RR vol. 6 at 556. Eric Perez and Edmundo Perez did not sign the document. RR vol. 5 at 151.

Notwithstanding Manuel Arellano's signature on Partnership Dissolution Agreement, Manuel Arellano maintained that he owned the club outright. RR vol. 5 at 75-81. After much pressing, Manuel Arellano acknowledged that it stood to reason that he had an obligation to reimburse Eric Perez for all of the funds he advanced into the business. RR vol. 5 at 84. Manuel Arellano indicated that Eric Perez would be reimbursed from the corporate account and from him personally. RR vol. 5 at 84, 89.

After the lockout when Manuel Arellano took over, the business plummeted. In fact, by the time of the trial, the business was not even open and closed in March of 2014. RR vol. 4 at 213, RR vol. 5 at 122. Edmundo Perez was not even allowed back onto the property during the pendency of the suit. RR vol. 5 at 153. The employees treated the Perez brothers differently after the lockout as well. RR vol. 5 at 153-154.

## ARGUMENT AND AUTHORITIES

**I.     The trial court erred by determining that the Perez brothers did not have any ownership interest in Le Prive Enterprises, LLC.**

**A.     The totality of the circumstances point to the existence of a partnership.**

The Supreme Court spelled a totality of circumstances test for trial courts pressed with ascertaining the existence of a partnership. *Ingram vs. Deere*, 288 S.W. 3d 886 (Tex. 2009).

Under the common law, the Court recognized that a partnership or joint enterprise "presupposes an agreement to that end," which could be either express or implied. *Donald v. Phillips*, 13 S.W.2d 74, 76 (Tex.1929). We explained that the "intention of the parties to a contract is a prime element in determining whether or not a partnership or joint venture exists*." Coastal Plains Dev. Corp. v. Micrea, Inc.*, 572 S.W.2d 285, 287 (Tex.1978) *(citing Luling Oil & Gas Co. v. Humble Oil & Ref. Co.*, 144 Tex. 475, 191 S.W.2d 716, 722 (1946) ("[A] court would not declare that a partnership existed unless that intention clearly appeared....")). The common law also considered that profit sharing was the most important factor shedding light on the intention to establish a partnership. *See Friedlander v. Hillcoat*, 14 S.W. 786, 787 (Tex.1890) ("A common interest in the profits is an essential element to constitute a partnership."). These two elements

were incorporated into a five-factor test that developed under the common law for partnership formation: (1) intent to form a partnership, (2) a community of interest in the venture, (3) an agreement to share profits, (4) an agreement to share losses, and (5) a mutual right of control or management of the enterprise. *Coastal Plains*, 572 S.W.2d at 287 *(citing Brown v. Cole*, 155 Tex. 624, 291 S.W.2d 704, 709 (1956), and *Luling Oil & Gas*, 191 S.W.2d at 722). These factors continued to guide the question of partnership formation when Texas promulgated and later amended statutory regimes governing partnerships.

The trial testimony of the Perez' brothers was consistent and unimpeachable concerning the existence of and nature of the partnership. Manuel Arellano offered inconsistent versions of whether the Perez' brothers had an profit-sharing agreement with him. Manuel Arellano acknowledged signing the Partnership Dissolution Agreement which set out the ownership interests of each partner in the company. Given the trial record, the trial court's determination that they did not is against the greater weight and preponderance of the evidence. As such, this Court should reverse this finding.

**B.** **The certificate of formation does not preclude finding of Perez' ownership, because it does not need not identify all members.**

Plaintiffs paid much attention to the certificate of formation for the Le Prive Enterprises, Inc., LLC suggesting that the fact that Eric and Edmundo are not identified on this document as members means, necessarily, that have no ownership. In the first place, the Certificate of Formation for Le Prive Enterprises, LLC does not state that Manuel Arellano is not its sole member, as suggested by counsel at trial. It merely describes him as the managing member. RR vol. 6 at 2-4, Π's Ex. 1.

The Certificate of Formation, according to V.T.C.A., Business Organizations Code §3005, does need not identify all of the members. For privacy reasons, many limited liability companies refrain from listing them. At most, the articles only mean that Manuel Arellano was an initial member of the company who acted as its manager. Contrary to the characterization made by Plaintiffs, the formation document is not inconsistent with the testimony from the Perez Brothers that they had ownership in the company from its inception. To the extent that the trial court concluded that the articles of incorporation necessarily implied that the Perez did have ownership interest in the company, the trial court erred. Accordingly, this Court should reverse the trial court's determination that the Perez brothers had no such interest and remand the matter for a determination of

12

the relative rights, duties and obligations of the parties. Alternatively, this Court should render that the the profits and the ownership of the club would be as follows: (1) Manuel Arellano – 35%; (2) Eric Perez – 35%; (3) Edmundo Perez - 30%.

**C.      The Texas Business Organizations Code provides for oral operating agreements by limited liability company amongst members.**

Contrary to the position taken by the Plaintiffs, the Texas Business Organizations Code specifically contemplates oral agreements with respect to the operation of a limited liability company. The Texas and Business Organizations Code, to which the Plaintiffs rely in contending that the Perez can not have any ownership rights, specifically contemplates and permits members to enter into an oral agreement spelling out the corporations operations.

Sec. 101.001 provides as follows:

> (1)  **"Company agreement" means any agreement, written or oral, of the members concerning the affairs or the conduct of the business of a limited liability company.**  A company agreement of a limited liability company having only one member is not unenforceable because only one person is a party to the company agreement. *See*, Tex. Bus. Orgs. Code 101.103 (b) [emphasis added].

Manuel Arellano acknowledged that **Le Prive Enterprises, L.L.C.** did not have a written operating agreement. Given that there is no written operating agreement, the Court is left deciphering whether Manuel Arellano, who could not

13

even his story straight, or the Perez brothers who have testified consistently and in exact alignment with the only written document reflecting the relative ownership of the parties and which was signed by Manuel Arellano.

If the trial court decided that the Perez brothers were not partners because there was no written partnership agreement, the trial court employed the wrong legal standard, and this Court should reverse and remand this case for the trial court's determination of the Perez' declaratory judgment action. Alternatively, this Court should reverse and render that the Perez brothers had ownership rights.

**D.     The Partnership Dissolution Agreement satisfies any writing requirement, if one exists.**

After trial, the Plaintiff's submitted a trial brief suggesting that the effective date of an individual's membership into an limited liability corporation must contained in writing. In first place, the Plaintiffs fail to provide the court with entirety of the relevant statutory provision; this omission seems deliberate since the omitted portion provides that the effective date of membership after the corporation is formed does not need to be in writing.

Tex. Bus. Orgs. Code , Sec. 101.103 provides:

EFFECTIVE DATE OF MEMBERSHIP

(a)  In connection with the formation of a company, a person becomes a member of the company on the date the company is formed if the person is named as an initial member in the company's certificate of formation.

14

(b) In connection with the formation of a company, a person being admitted as a member of the company but not named as an initial member in the company's certificate of formation becomes a member of the company on the latest of:

    (1) the date the company is formed;

    (2) the date stated in the company's records as the date the person becomes a member of the company; or

    (3) if the company's records do not state a date described by Subdivision (2), the date the person's admission to the company is first reflected in the company's records.

(c) A person who, after the formation of a limited liability company, acquires directly or is assigned a membership interest in the company or is admitted as a member of the company without acquiring a membership interest becomes a member of the company on approval or consent of all of the company's members. See, Tex. Bus. Orgs. Code

As can be seen, there is really is no requirement that the membership effective be recorded in writing. Even if the Texas Business Organizations Code requires the partnership interest be documented in writing, the Partnership Dissolution Agreement satisfies any such writing requirement. The December 4, 2013 contract makes clear that the Perez brothers are members, and the document can reasonably be read to mean that the Perez brothers joined the limited liability company on the day the contract was signed. In fact, the four corners of the document make clear that the parties had a partnership before the corporation was formed and that "said partnership is incorporated as Le Prive Enterprises, LLC."

15

In addition, the agreement spells out the relative ownership of the individual parties to this action enough to meet any writing requirement, if any, actually exists.

Since the December 4, 2013 contract signed by Manuel Arellano reflects the Perez brothers' membership in Le Prive, the trial court erred in concluding otherwise, and this Court should reverse this finding.

**E.      Indefinite duration of partnership means that agreement falls outside of ambit of Statute of Frauds.**

Plaintiffs suggest that the Perez' brothers' claims are barred by the Statute of Frauds. Tex. Bus. & Comm. Code Ann. Sec. 26.01(a)(1) and (2), V.T.C.A., provides:

'(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is

(1) in writing; and

(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

According to Sec. 26.01(b)(6), which brings within the prohibition of the Statute of Frauds: '(6) an agreement which is not to be performed within one year from the date of making the agreement; and (R.S. Art. 3995.)'

16

The Perez brothers do not dispute that the oral partnership in this case was for an indefinite period of time. Manuel Arellano testified that no such agreement actually exists.

It must be shown that the oral partnership agreement provided for a period extending beyond a year, not merely that the parties contemplated such agreement to extend beyond a year. In *Sapphire Royalty Company v. Davenport*, 306 S.W.2d 202 (Tex.Civ.App.—Houston 1957, writ ref'd n.r.e.), the Court stated:

"The fact that it is improbable that performance will occur within a year, or, that the parties think it will continue beyond a year, matters not if the agreement itself does not provide a period extending beyond the year. And the fact that it does, as here, continue more than a year does not offend the statute. 49 Amer.Jur., s 28, p. 389; Warner v. Texas & P.R. Co., 164 U.S. 418, 17 S.Ct. 147, 41 L.Ed. 495; 20—A Tex.Jur., pp. 322—323; *Lennard v. Texarkana Lumber Co.*, 46 Tex.Civ.App. 402, 94 S.W. 383; *Rainwater v. McGrew, Tex.Civ.App.*, 181 S.W.2d 103, writ ref. w.m." *See also Hall v. Hall*, 158 Tex. 95, 308 S.W.2d 12 (1957); Bratcher v. Dozier, 162 Tex. 319, 346 S.W.2d 795 (1961); *Terrazas v. Sullivan*, 470 S.W.2d 904 (Tex.Civ.App.—El Paso 1971, writ ref'd n.r.e.); *Eisenbeck v. Buttgen*, 450 S.W.2d 696 (Tex.Civ.App.—Dallas 1970, no writ).

Given that there is no direct evidence that the partnership actually contemplated performance for more than one year, the statute of frauds does not apply. If the Court concluded that the statute of frauds precluded the existence of a partnership agreement, it erred and this Court can use the Statute of Frauds as a basis for upholding the improper rendition.

**F.     Partial performance insulates partnership agreement from Statute of Frauds.**

At trial, the Court correctly pointed out that partial performance insulates insulate the agreement against the Statute of Frauds. *See e.g., Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114, 1116 (1921) (involving the conveyance of realty); *Welch v. Coca-Cola Enterprises., Inc.*, 36 S.W.3d 532, 539 (Tex.App.Tyler 2000, no pet.) (involving the placement of vending machines on school property for five years). Given the evidence of trial of Eric Perez's substantial investment and Edmundo's effort and out-of-pocket expenses advanced in reliance on Manuel Arellano's promises, this Court can not affirm the trial court predicated upon the statute of frauds.

**II.** **The trial court erred in limiting the award for Eric Perez against Le Prive Enterprises, L.L.C. to $2,510.00 when the evidence showed that Eric Perez invested at least $163,55.26 into the business and failing to award any recovery to Edmundo Perez where the evidence showed that he invested time, effort and $66,754.84 into the business**.

A trial court's findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex. 1989). In reviewing a "no evidence" point of error, a reviewing court may consider only the evidence and inferences that tend to support challenged findings and will disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex. 1988). If there is more than a scintilla of evidence to support the findings, the "no evidence" challenge cannot be sustained. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987).

The record before the trial court made clear the Perez made substantial investments into the business. The trial court's final judgment disregarded the evidence and left the brothers with an inequitable result. The court not only found that they had no rights of ownership but the court only granted Eric Perez a partial reimbursement against the corporation. Even if Manuel Arellano's characterization of the agreement of the parties was taken as true, Manuel Arellano still had an obligation to reimburse the Perez brothers until such time as

19

they acquired ownership. RR vol. 5 at 80-85. The Perez brothers proved their entitlement to a recovery of their expenses. For Eric Perez the total was in excess of $160,000.00 as demonstrated in the receipts in Defendant's Ex. 8 & 9 and trial testimony. Plaintiffs called Ricardo Mena who confirmed that Edmundo Perez paid $55,000.00 from his personal bank account. The trial court erred in concluding that the just amount due and owing to Eric Perez was $2,510.00. The undersigned could not even find a match in the record for this amount. As such, this Court should reverse the trial court and render that Eric Perez and Edmundo Perez have a judgment against Manuel Arellano, individually, in the amount of their advanced expenses.

## III. The trial court erred in awarding a judgment in favor of the Perez brothers in the amount of $16,000.00 for conversion.

Conversion is the wrongful exercise of dominion or control over the property of another in denial of, or inconsistent with, the other's rights in the property. *Morey v. Page*, 802 S.W.2d 779, 786 (Tex. App.-Dallas 1990, no writ) (*citing Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446, (Tex. 1971)). Conversion has been defined in various ways. Basically, conversion is a wrongful deprivation of property. *Lone Star Beer, Inc. v. Republic Nat'l Bank of Dallas*, 508 S.W.2d 686, 687 (Tex. Civ. App.-Dallas 1974, no writ). To constitute conversion, there must be some repudiation of the owner's right or an exercise of dominion

20

over the property, wrongfully and in denial of or inconsistent with that right; or there must be an illegal assumption of ownership." *Dolenz v. Nat'l Bank of Tex. at Fort Worth*, 649 S.W.2d 368, 370 (Tex. App.-Fort Worth 1983, writ ref'd n.r.e.). A conversion defendant must intend to assert some right in the property to be held liable. Id.

A plaintiff who establishes conversion is entitled to either the return of the property and damages for loss of use during the tort-feasor's detention, or the value of the property. *Winkle Chevy-Olds-Pontiac, Inc. v. Condon*, 830 S.W.2d 740, 746 (Tex. App.--Corpus Christi 1992, *writ dism'd*); *Southwind Aviation, Inc. v. Avendano*, 776 S.W.2d 734, 737 (Tex. App.--Corpus Christi 1989, writ denied). However, the plaintiff may not generally recover in conversion both for the market value of the property and for loss of use. *See First Nat. Bank of Missouri City v. Gittelman*, 788 S.W.2d 165, 169 (Tex. App.--Houston [14th Dist.] 1990, *writ denied*); *Southwind Aviation*, 776 S.W.2d at 737.

If the plaintiff elects to recover the value of the property, actual damages are determined by the fair market value at the place and time of conversion together with legal interest thereon. *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147-48 (Tex. 1997); *Imperial Sugar Co. v. Torrans*, 604 S.W.2d 73, 74 (Tex.

1980); *Taiwan Shrimp Farm Village Ass'n, Inc. v. U.S.A. Shrimp Farm Development, Inc.*, 915 S.W.2d 61, 71 (Tex. App.--Corpus Christi 1996, writ denied).

The trial court's judgment is unsupported by the evidence adduced at trial. The Plaintiff's alleged that the Perez brothers must have taken the generator for the lights. However, there was no evidence in the record that the Perez brothers either took this generator or had in their possession. Manuel Arellano predicated his claim on the fact that the generator was missing the day after the court ordered the Perez brothers to return the furniture. RR vol. 5 at 63-64. This evidence is to sketchy to support a liability finding that the Perez converted the generator. Even so, Manuel Arellano indicated that the cost associated with repairing the lights was $1,300.00.

Eric Perez and Edmundo Perez acknowledged removing sofas, tables and lights from the club from Thanksgiving week until the court hearing on December 20, 2015. Manuel Arellano confirmed its return in trial testimony within three weeks. RR vol. 5 at 61.Guillermo Altamirano, the corporate representative for Le Prive Enterprise, LLC, could not confirm whether the furniture belonged to the company or the Perez brothers. RR vol. 5 at 119-120.

22

Guillermo Altamirano testified that there was liquor missing, valued at between 5 to 10 thousand dollars. RR vol. 105. This testimony could not survive cross examination because he could not explain the fact that the club only spent $2,650.00 in liquor from the lockout until the temporary injunction hearing. RR vol. 5 at 124. The Perez brothers denied taking either the generator or the alcohol. RR vol. 5 at 158.

While the trial court properly concluded that the Perez brothers were the prevailing party under the Texas Theft Liability Act, the record contains no evidence, or insufficient evidence, to support its judgment against them for conversion. Accordingly, this Court should reverse and render that the limited company take nothing.

## PRAYER

For all of these reasons, the trial court erred in deciding that Eric Perez and Edmundo Perez did not have any ownership rights in the limited liability company. Alternatively, Eric Perez and Edmundo Perez should be entitled to a recovery against Manuel Arellano for their expenses invested into the business in the amount of $160,000.00 and $55,000.00 respectfully. This Court should reverse the trial court's determination that Perez brothers converted any of the corporate property and render that the Plaintiff corporation take nothing.

Respectfully submitted,

/s/ J. Nathan Overstreet
James Nathan Overstreet
State Bar No. 00784706
**J. Nathan Overstreet & Assoc., P.C.**
8711 Highway 6 North, Suite #230
Houston, Texas 77095
Overstreetlawfirm@gmail.com
(281) 855-1000; Fax (281) 855-4580

Attorney for **ERIC E. PEREZ, and
EDMUNDO PEREZ**, Appellants

**CERTIFICATE OF COMPLIANCE**
**<u>RULE 9.4(i)(3) OF THE TEXAS RULES OF APPELLATE PROCEDURE</u>**

I certify that this document was computer generated and that according to the word count function of the software program used to prepare the document, the document has 6,824 words.

/s/ J. Nathan Overstreet
James Nathan Overstreet


**<u>CERTIFICATE OF SERVICE</u>**

As required by Texas Rule of Appellate Procedure 6.3 and 9.5(b), (d), (e), I certify that I have served this document on all other parties which are listed below on August 19, 2015, as follows:

*Sent Electronically to*
Daniel W. Jackson
3900 Essex Lane, Suite #1116
Houston, Texas 77017
(713) 522-4435
fax (713) 527-8850
daniel@jacksonlaw-tx.com

/s/ J. Nathan Overstreet
James Nathan Overstreet